## CHICAGO, BURLINGTON & QUINCY R. R. CO.

### v.

### JOHN STAFFORD.

1. NEGLIGENCE OF CO-SERVANT.—One of two employes of the same master, while engaged in the same line of general duty, can not recover for any injury received on account of the negligent acts of the other, unless the common master has been guilty of some negligence, either in the employment of such servant or in retaining him in such service after notice of his unfitness for such employment.

2. WHEN SERVANT MAY RECOVER.—If the complaining servant enters into the employment of such common master, or remains in it after notice of the character of his co-servant for recklessness or carelessness, and he receives any injury in consequence of the negligent acts of his co-employe, he can not recover unless he has notified the master of the character of such servant, and the master has promised to remove him and has failed, while the servant was engaged with such employe for a reasonable time on the faith of such promise.

APPEAL from the Circuit Court of Peoria county; the Hon. N. M. LAWS, Judge, presiding. Opinion filed February 5, 1885.

The appellee and Robert Mack were both in the employ of the appellant on and prior to the 11th day of June, 1883, when the accident complained of happened, the one the switchman or helper, and the other the engineer of the switch engine, which they were both operating and working together in the appellant's yard in Peoria, Ill., engaged in switching cars, and the two had been together, so operating, for about one month. They were what the law denominates fellow servants of the same master, engaged in the same line of employment. While the appellee was engaged with Mack, on that

day, in coupling a certain passenger car, and in his proper place on the foot board in front of the engine, and Mack was in his proper place on the engine, driving and conducting the engine, the latter failed to stop the engine in time to prevent it from striking the car in front of it, by means of which the draw-bar or coupling was broken, and the front part of the engine was forced against the end of the car, and appellee was caught and crushed between the locomotive and car and greatly injured, sustaining an oblique fracture of the right femur in the upper third, also a comminuted fracture of the left femur in the lower third, and the intervening part of the bone was shattered, the muscles and tissues considerably bruised, and he sustained some injury to the muscles of the chest and abdomen. The result of the injury was that his right leg is shorter than the left, that he is bow-legged, and that he will never be able to resume his duties as a switchman.

The gravamen of the complaint is that Mack, the engineer, was incompetent and unskillful in operating and controlling this engine, as well as others under his control, and that through his negligence and carelessness the injury occurred; that he was at the time, and had for a long time before, been incompetent to properly manage and control that engine and others; that the appellant had notice of this and had had such notice for a long time; that the appellee did not have such notice.

The cause was tried in the court below and resulted in a verdict and judgment in favor of the appellee, and an appeal is taken to this court.

Messrs. JACK & MOORE, for appellant; cited Wood on Master and Servant, §§ 416, 419; Summersell v. Fish, 17 Mass. 312; Warner v. Erie R. R. Co., 39 N. Y. 470; Caldwell v. Brown, 53 Pa. 457; Beaulien v. Portland Co., 48 Me. 294; Harrison v. R. R. Co., 31 N. J. 293; Hard v. Vt. Cent. R. R. Co., 32 Vt. 473; O'Connell v. B., etc., R. R. Co., 20 Md. 212; Thayer v. St. L., etc., R. R. Co., 22 Ind. 26; Morgan v. V. of N. Ry. Co., 12 B. 154; Feltham v. England, 22 B. 33.

C., B. & Q. R. R. Co. v. Stafford.

Messrs. WILSON & BAUM, and Messrs. STEVENS, LEE & HOR-
TON, for appellee; as to notice, cited Mich. Cent. R. R. Co. v.
Gilbert, 46 Mich. 176; Davis v. Detroit, etc., R. R. Co., 20
Mich. 124; Cooley on Torts, 559.

LACEY, J.   There are several points raised by appellant's
counsel and urged as grounds for reversal, such as the im-
proper admission of testimony of witnesses who were allowed
to give their opinion as to whether Mack was a careful, com-
petent and safe engineer or not, and as to whether specific
acts of negligence on the part of Mack to show his careless-
ness and to show notice to the company were competent,
and as to whether certain of appellee's instructions were
properly given and certain of appellant's offered were properly
refused, but as we have concluded to reverse the judgment of
the court below on the ground that there was not sufficient
evidence to support the verdict, it will not be necessary and
we will not pass upon those questions.

We shall simply notice this feature of the case:

The declaration charges that the engineer, Mack, was habitu-
ally careless and negligent and for a long time had been, and
that this fact was known to the appellant; hence the inference
of law that it was negligent in retaining him in its employ-
ment, and therefore responsible for all the negligent acts of
the engineer, even for injury resulting to its own employes
working with him and in the same line of employment.   It is
again averred that appellee had no notice or cognizance of
such fact.   If he had, it must be admitted that he can not re-
cover even if the first two averments have been established.
It admits of serious doubt from the evidence whether Mack
was so reckless and incompetent that an ordinary prudent
man, knowing his character, would not have retained him in
like service, and also whether appellant should be charged
with notice; but it is quite clear that the appellee had as full
notice of Mack's character as an engineer as the appellant,
and this is deduced from the testimony of appellee himself.

The main complaint against the competency of Mack is
that he was too lively in running his engine when coupling

cars, that he ran it habitually too fast, thereby subjecting it to the hazard of running into the car he was attempting to couple to, in fact the very hazard that caused this accident, in all probability. No other point of carelessness or incompetency is charged against him. His character as to the manner of switching seemed to be generally well understood among all the railroad men with whom he worked—some of whom considered his mode of switching dangerous and some did not. It seems that he had a remarkable power of stopping his engine suddenly and saving any danger of collisions, and in all probability would have stopped this one at the time when the accident happened, save for the railroad track being wet so that the wheels did not cause sufficient friction on the track to enable him to stop in time.

Did the appellee have notice of this trait of character in Mack? He himself settles that point fully. He had been working with him about a month before the accident in this very business. He says: " Mack always handled his engine pretty fast; he always did good work and made good stops until this time, he didn't stop." * * * " Always before this he would come up pretty lively and pull his engine over and stop from six to ten feet before he would get to the car, then throw her into the forward motion and come up so that I could make the coupling." * * " Before this he always came up to the car carefully after he would stop. He approached the car pretty fast and a man that was not used to him, or acquainted with him, would think he would run into a car most every time" * * " would think the engine would get away, because he came up at pretty good speed, and handled his engine lively, and a man had to work pretty lively with him." The appellee testified that he had been a railroad man ever since the war and worked as a switchman at yard work for several years. He twice worked in the P. & P. U. Ry. yards, alongside defendant's yards. He swears that, " During the month preceding the accident in which I assisted in making up these trains, Mr. Mack was engineer all the time except one half a day. I was familiar with Mr. Mack's way of handling the trains; I knew he was in the habit

of running up rapidly and stopping just before he got to the car and then slowing it up. He made this coupling this day in the same manner he always did except this time his engine did not stop, for some reason. I did not notice that he came up more rapidly that day than usual; I do not know as he started up from the switch any faster than he had been in the habit of doing." * ·· * " I had done this same kind of work with him three times a day, and he did it that morning in the same manner as usual, except that his engine did not take a halt. He was a man who handled his engine quickly and well, and one that I always had a great deal of confidence in and had at that time; he did good work and made good stops until this time. I never knew him to fail except in this instance."

It is seen from this testimony of appellee himself that he had full and complete notice of the very faults that Mack had, which is relied on alone to show that he was habitually incompetent and reckless in running his engine. The information that appellee had was the same that appellant could have been informed of and no other. If that was sufficient to compel the discharge of Mack by appellant at the peril of its being responsible to his employes for all damages that they might receive on account of his negligent acts, then it was sufficient to bar the right of recovery of appellee if he received injury on account of such negligence.

The law in this State is that one of two employes of the same master, while engaged in the same line of general duty, can not recover for any injury received on account of the negligent acts of the other, unless the common master has been guilty of some negligence, either in the employment of such servant or in retaining him in such service after notice of his unfitness for such employment; and if the complaining servant enters into the employment of such common master or remains in it after notice of the character of his co-servant for recklessness or carelessness, and he receives any injury in consequence of the negligent acts of his co-employe, he can not recover unless he has notified the master of the character of such servant, and the master has promised to remove him, and

has failed, while the servant was engaged with such employe for a reasonable time on the faith of such promise.

The Supreme Court seems to have laid down the law fully on this point in Missouri Furnace Co. v. Abend, 107 Ill. 44. The court say: "The questions raised and discussed on this record have not heretofore been considered by the court in the exact form now presented, and the court is at liberty to determine them as of first impression." * * * "Should the employe discover the service had become more hazardous than usual, or than he had anticipated, by reason of defective machinery, the retaining of unfaithful fellow servants, or for any other cause, the general rule is, he must quit the service or assume the extra risk to which he is exposed. The rule of law rests in this respect on a correct principle." After deciding that notice of the discovery of new perils must be given to the master, the court further says: "The relation of master and servant imposes no obligation on the master to take more care for the servant than the servant is willing to observe for his own personal safety." Then the court goes on to give the exception, where there is a notice and promise on the latter's part to remedy the wrong complained of. But as appellee gave no notice or made any complaint it is not necessary to notice this exception to the rule further.

This being the law, whether wisely or unwisely, it must be enforced and not allowed by the courts to be evaded. It is indeed a sad accident that has befallen the appellee, and there is no one who could fail to have the deepest sympathy for him in his misfortune, and in consequence we have given the case unusual attention and have come to the conclusion which we have announced, that it falls clearly within the rule of the law that forbids a fellow servant of a common master from recovering damages from such master for injuries received by reason of the negligence of his servant while engaged in the same line of duty—and the evidence in the case fails to show by any possibility that the appellee's case falls within any exception to the general rule at present recognized by the laws of the State.

The judgment of the court below is therefore reversed.