THE MISSOURI FURNACE COMPANY

*v.*

EDWARD ABEND.

. *Filed at Mt. Vernon June 16, 1883.*

**1.** APPEAL—*reviewing controverted facts.* In an action on the case to recover for the death of the plaintiff's intestate, occasioned by the alleged negligence of the defendant, in which the plaintiff recovered, and the judgment is affirmed by the Appellate Court, it will be assumed that whatever the evidence tended to prove was found in favor of the plaintiff, and such finding is conclusive upon this court.

Syllabus.

2. NEGLIGENCE—*of evidence as to due care on the part of the plaintiff, in an action to recover for personal injury.* In an action to recover damages for a personal injury alleged to have resulted from the negligence of the defendant, the law does not always require positive proof of due care and diligence on the part of the plaintiff. Under certain circumstances it may be taken for granted that he observed usual and ordinary care for his personal safety. So where an engineer upon a railroad, who was killed by defects in a foot-board, was shown to be a competent and careful servant in his employment, and he was seen a few moments before his death in the observance of due care, it was *held*, that it could not properly be said there was an entire want of evidence on this branch of the case.

3. SAME—*negligence as a question of fact.* It is a question of fact whether a servant is guilty of negligence by continuing to use defective machinery for a reasonable time for the master to make the needed repairs, after his promise to do so.

4. INSTRUCTION—*as being based upon evidence.* If there is evidence in a case tending to prove that a party, at the time of receiving an injury, observed ordinary care, that will be sufficient to warrant the giving of an instruction based upon that hypothesis.

5. MASTER AND SERVANT—*liability of the former for injuries received by the latter in his service—of their relative duties.* A party entering the service of a railroad company, or other corporation using locomotives as propelling power, assumes by his contract all the ordinary hazards arising from the performance of the duties of his voluntary engagement, and for an injury arising from such perils no recovery can be had.

6. It is, however, the duty of the employer not to expose the employé to other perils not within those commonly known to be incident to the service he is expected to perform. On this principle it is the implied duty of the master to furnish reasonably safe machinery for use, and to observe ordinary care in selecting fellow servants.

7. If an employé discovers that the service has become more hazardous than usual, or than he had anticipated, by reason of defective machinery, the retaining of unfaithful fellow servants, or from any other cause, the general rule is, he must quit the service or assume the extra risks to which he is exposed. The law imposes no obligation on the master to take more care of the servant than the latter is willing to observe for his own personal safety.

8. This general rule, however, has its exceptions. When the master, on being notified by the servant of defects that render the service he is engaged to perform more hazardous, expressly promises to make the needed repairs, the servant may continue in the employment a reasonable time to permit the performance of the promise without being guilty of negligence, and if any injury results therefrom he may recover, unless he should continue in the employment when the danger is so imminent that no prudent

| 107 | 44 |
|-----|-----|
| 165 | 47 |
| 167 | 564 |
| 67a | 339 |

| 107 | 44 |
|-----|-----|
| 69a | 260 |

| 107 | 44 |
|-----|-----|
| 170 | 208 |
| 72a | 146 |
| 72a | 411 |

| 107 | 44 |
|-----|-----|
| 174 | 584 |
| 73a | 158 |
| 75a | 381 |

| 107 | 44 |
|-----|-----|
| 80a | 445 |

| 107 | 44 |
|-----|-----|
| 88a | 166 |

| 107 | 44 |
|-----|-----|
| 89a | 25 |

| 107 | 44 |
|-----|-----|
| 97a | 8127 |

| 107 | 44 |
|-----|-----|
| 100a | 8374 |

| 107 | 44 |
|-----|-----|
| 103a | 3461 |

| 107 | 44 |
|-----|-----|
| 105a | 8266 |

| 107 | 44 |
|-----|-----|
| 205 | 8277 |

| 107 | 44 |
|-----|-----|
| 212 | 7280 |
| 212 | 1310 |

man would undertake to perform the service. The promise of the master, in such case, relieves the servant from the charge of negligence by continuing in the service.

Appeal from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. George W. Wall, Judge, presiding.

On the 21st day of February, 1880, Charles Castaine, since deceased, was in the employ of the Missouri Furnace Company, as engine-driver on the switch locomotive used by the company for moving cars in and about its yards. While thus employed on that day, he in some way fell from the locomotive, and was run over by it and killed. Afterwards the administrator of his estate brought this suit against the company to recover damages resulting to the widow and next of kin on account of the death of the intestate, which it is alleged was caused by the negligent conduct of defendant. Recitals in the declaration set forth the duty of defendant to keep the engine in suitable repair, and as a breach of that duty it is averred defendant permitted the engine to become and remain out of repair, and dangerous to the engine-driver. Among the principal defects that led to and caused the death of the intestate, it is averred the engine was so constructed it could not be oiled except when running; that it was out of repair, and dangerous to the employé, and that there were no platforms or other safeguards so as to protect such employé while engaged in oiling and running it; and that the foot-board in front of the engine was out of repair, and in an unsafe condition. It is also further alleged, that "on the 21st of February Charles Castaine was in the employ of defendant, and was engaged in running said engine on said railroad, as engineer, and that then and there he complained to said defendant, and notified it of the said defective and dangerous condition of said engine, and said defendant caused

the said Charles Castaine to remain and continue in said employment by then and there promising him that said defects, including the repairing of said foot-board, would be speedily repaired and remedied; that defendant did not heed its duty in this respect, and failed and neglected to remedy said defects; and that on said 21st day of February, and while he was in the employ of defendant as engineer, and was engaged in running said engine, using due care and diligence, he was, in consequence of said defects, thrown with great force and violence from said engine, and was thereby then and there killed." The names of the widow and children surviving the deceased are stated in the declaration, and it is then averred that in consequence of his death they were deprived of the support he had hitherto given them. A demurrer interposed to the amended declaration was overruled, and defendant pleaded the general issue, on which a trial was had, which resulted in a verdict for plaintiff, on which judgment was rendered. The first judgment for plaintiff was reversed, on defendant's appeal, by the Appellate Court. On the second trial plaintiff recovered a second verdict in the sum of $3000. The motion made for a new trial was overruled, and the court pronounced judgment on the verdict. This latter judgment, on the appeal of defendant, was affirmed in the Appellate Court for the Fourth District, and defendant brings the case to this court on its further appeal.

Messrs. G. & G. A. KOERNER, for the appellant.

Mr. JAMES M. DILL, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

It is not insisted in this court, as was done in the courts below, that the verdict is against the weight of the evidence, nor is it expected this court will reëxamine the evidence on controverted questions of fact. It will be assumed that

whatever the evidence tends to prove was found in favor of plaintiff, and that finding, under the Practice act, is, of course, conclusive on this court. It is said, however, there is an entire want of evidence to sustain the averment of the declaration that deceased "used due care and diligence" for his personal safety, and that this defect is fatal to the present recovery. No one saw the accident, but the evidence warrants the belief that deceased fell from the foot-board while in the act of oiling the engine when in motion, and was killed. The concession of counsel is, no doubt, correct, it does not always require positive proof of the exercise of due care and diligence. Under certain circumstances it may be taken for granted deceased observed usual and ordinary care for his personal safety. That is the case here. The testimony from all sources is, that deceased was a competent and careful engineer. There is some evidence tending to show the engine could not well be oiled, on account of its peculiar construction, except when in motion, and the jury must have so found. Had the foot-board been in order, there would have been no danger in so doing. It was the usual mode of oiling the engine. The deceased was seen, a few moments before his death, in the observance of due care. In the brief period that intervened it is unreasonable to believe he ceased to use that ordinary care that he had been accustomed to observe during the whole time he had been in the company's employ. All the circumstances tend to show the exercise of due care and caution on the part of deceased at the time of the accident, so that it is not accurate to say there was an entire want of evidence on this branch of the case. A similar objection was taken in *Chicago, Burlington and Quincy R. R. Co.* v. *Gregory*, 58 Ill. 272. In that case it was said : "Up to within a moment of the accident, he," deceased; "was shown to have been in the exercise of due care in his proper place, and it would do violence to the facts in the case to presume that in the instant that intervened he was

guilty of negligence, in the absence of proof of any circumstances that even tend to establish the fact of negligence." No one in that case saw the accident, and no affirmative evidence was given as to what care the deceased observed. It was thought to have been made to appear from the circumstances attending the accident, and it was said it was immaterial how the fact was made to appear, so it did appear.

Passing on, the principal question made will be briefly considered. It is, whether deceased was, himself, guilty of such negligence by remaining in defendant's service after he knew the foot-board was in a dangerous condition, as will bar a recovery. The proof is, deceased notified the proper officers of the company whose duty it was to make and direct when repairs should be made, of the dangerous condition of the foot-board, and the averment is, defendant "caused the said Charles Castaine to remain and continue in said employment by then and there promising him that said defects, including the repairing of the foot-board, would be speedily repaired and remedied; that defendant did not heed its duty in this respect, and failed and neglected to remedy said defects." There was evidence tending to sustain this averment in the declaration, and, of course, it will be assumed, for the purposes of this decision, the jury so found in support of the verdict, and the affirmance of the judgment by the Appellate Court implies a finding of the facts in the same way. It only remains, therefore, to consider the questions of law raised. On this branch of the case the court gave the following instruction for plaintiff: "The court instructs the jury, that if they believe, from the evidence, that the deceased, Charles Castaine, while in the exercise of due care and caution, was killed in consequence of the defective condition of the engine used by defendant, as alleged in the declaration, and if they further believe, from the evidence, that the said Castaine, shortly before his death, called the attention of the superintendent and foreman-carpenter of the defendant to

said defects, and that said persons, or either of them, then had authority to remedy said defects, and that said persons, or either of them, thereupon promised the said Castaine that said defects should be remedied, and that said Castaine, relying upon such promise, remained in the employ of the defendant until he was killed, as aforesaid, then the jury must find for plaintiff." This charge is not subject to the criticism made upon it, that it assumes deceased was in the exercise of due care and diligence. Nor is it true there was no evidence on which to base it. As has been seen, there were circumstances tending to show deceased observed ordinary care, and that was sufficient to warrant the giving of the instruction. But the objection most elaborated in the argument is, the "instruction lays down as law that a mere promise to repair justified the deceased to use the foot-board, though he knew it was dangerous." The principle embodied in this charge is broader than the objection taken assumes it to be. It proceeds on the theory, deceased, "relying upon said promise, remained in the employ of the defendant until he was killed."

The questions raised and discussed on this record have not heretofore been considered by the court in the exact form now presented, and the court is at liberty to determine them as upon first impression. The principles that lead up to the precise questions involved have been the subject of frequent discussion in this court. A party entering the service of a railroad company, or other corporation using locomotives as propelling power, assumes, by his contract of employment, all the ordinary hazards arising from the performance of the duties of his voluntary engagement. Where a person is injured by any of the ordinary perils incident to such service, however sad the consequences, the law will afford him no remedy. It is, however, the duty of the employer not to expose the employé to other perils not within those commonly known to be incident to the service he is expected to perform.

On this principle it is the implied duty of the master to furnish reasonably safe machinery for use, and to observe ordinary care in the selection of fellow servants. Should the employé discover the service had become more hazardous than usual, or than he had anticipated, by reason of defective machinery, the retaining of unfaithful fellow servants, or for any other cause, the general rule is, he must quit the service or assume the extra risks to which he is exposed. The rule of law in this respect rests on a correct principle. Where the servant discovers defects in machinery, or anything else that renders the service more hazardous, no matter from what cause the same may arise, it is all-important he should report the same to the common master, or at least to persons in the employ of the master whose duty it is to correct the same. Unless he does so the law has wisely provided he can not recover from the employer for injuries occasioned by extra perils he voluntarily encounters, without notice to the master. The relation of master and servant imposes no obligation on the master to take more care of the servant than the servant is willing to observe for his own personal safety. *Indianapolis, Bloomington and Western Ry. Co.* v. *Flanagan,* 77 Ill. 365; *Pennsylvania Co.* v. *Lynch,* 90 id. 334; *Columbus, Chicago and Indiana Central Ry. Co.* v. *Troesch,* 68 id. 545.

But the general rule thus stated admits of exceptions. It is now uniformly stated by text writers, that where the master, on being notified by the servant of defects that render the service he is engaged to perform more hazardous, expressly promises to make the needed repairs, the servant may continue in the employment a reasonable time to permit the performance of a promise in that regard without being guilty of negligence, and if any injury results therefrom he may recover, unless when the danger is so imminent that no prudent person would undertake to perform the service. (Wharton and Redfield on Negligence, sec. 96; Cooley on

Torts, 559; Wharton on Negligence, 220.)   The doctrine on this subject rests on sound principle, and it will be found to be supported by English and American decisions.   The reason upon which the rule is said to rest is, that the promise of the master to repair defects relieves the servant from the charge of negligence by continuing in the service after the discovery of the extra perils to which he would be exposed. (*Patterson* v. *P. and C. R. R. Co.* 76 Pa. St. 389; *Conrad* v. *Vulcan Iron Works*, 62 Mo. 35; *Hough* v. *Railway Co.* 100 U. S. 213; *Holmes* v. *Clark*, 7 H. & N. 348; *Clark* v. *Holmes*, id. 937.)   The facts in *Holmes* v. *Clark*, as shortly stated by POLLOCK, C. B., are, that when plaintiff entered into defendant's service the machinery was protected by an iron guard, but after he had been some months in the service the guard was broken, either by accident or decay, and the machinery remained unprotected.   The plaintiff complained of it more than once, and was told the guard should be restored.   This was not done, and whilst plaintiff, in the course of his duty, was oiling the machinery, he sustained the injury for which the action was brought.   Against plaintiff's right to recover on the facts as stated, two points were made, one a matter of fact, the other of law.   It was said plaintiff's own negligence caused the injury; but that was regarded as a question of fact, which the jury found in favor of plaintiff, and that was taken as conclusive.   The point of law was, that plaintiff having undertaken a dangerous service, with knowledge of the danger, could not recover damages in consequence of an injury which ensued from the risk he had voluntarily undertaken.   In ruling against the position taken by defendant, the court said: "Many cases might be put in which a servant might reasonably incur the risk instead of abandoning the service, and if, during a period when the danger of the service is increased by the machinery becoming unprotected, either by accident or decay, or from other cause, the servant complains, and the master promises

that the protection shall be restored, it must be considered that the master takes upon himself the responsibility of any accident that may occur during that period." The doctrine of this case was afterwards affirmed in *Clark* v. *Holmes, supra,* on appeal. The American cases cited all follow closely the doctrine of these English cases. Running through all the cases examined on this subject is the principle, that if the danger from continuing in the master's service is so imminent that no one but a person utterly reckless of his personal safety would venture upon it, the master is not responsible. Under such circumstances the law holds it to be negligence on the part of the servant that will bar any recovery in case of accident. It is, however, a question of fact, to be found as any other fact in the case, whether the servant is guilty of negligence by continuing to use defective machinery for a reasonable time for the fulfillment of the promise after the master has promised to make the needed repairs.

Applying these principles to the case being considered, the recovery is fully warranted by the facts as they must have been found by the trial and Appellate courts. The law applicable to the facts is stated with sufficient accuracy in the charge given by the court, and whether plaintiff was guilty of negligence by continuing to use the engine after the promise to make the repairs, was a question of fact, which the jury found for plaintiff, and since that finding has been affirmed by the Appellate Court it must be regarded as well found.

Only a single point more remains to be considered. The declaration contains an averment the machinery was out of order; that there was a promise to repair; that defendant failed to do so, and that the intestate, after such failure, was killed, and it is insisted there is a clear variance between the proof and the declaration in this respect. Such is not the case. There is evidence tending to show there was a promise to make repairs on the foot-board in the morning before the

happening of the accident. A workman appeared for that purpose, and would no doubt have made the repairs had not the yard-master directed a postponement until twelve o'clock of that day, for the reason the engine could not be spared until that time. There was, therefore, no variance between the proof and the declaration.

No error appearing that affects the merits of the case, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*