## THE CHICAGO ANDERSON PRESSED BRICK COMPANY

*v.*

### FRANK SOBKOWIAK.

*Filed at Ottawa January 16, 1894.*

1. NEGLIGENCE—MASTER AND SERVANT—*fellow-servants.* A general agent of a corporation, who has power to employ laborers, direct and control their movements, superintend their work, and to discharge them for disobedience to his orders, stands in a superior relation to a laborer or servant under his charge, and between such a representative of a corporation, and one employed by him to work, subject to his command and supervision, the relation of fellow-servant does not exist.

2. In an action by a servant employed to excavate clay under a bank, against the master, a corporation, to recover for a personal injury by the falling in of the bank while engaged in the pit, where he had been directed to go by the general agent of the defendant, an instruction asked by the defendant, that if the agent was acting as foreman at the time plaintiff was injured, that fact did not prevent the plaintiff and such general agent from being servants in the same line of employment, or render the defendant liable, was properly refused.

3. Where a servant is injured in consequence of his obedience to the command or order of a general agent of the defendant, who has full power to employ and discharge servants, and to direct them where to work, and supervise them, an instruction asked by the defendant on the trial of an action by a servant, based on alleged negligence, which seeks to narrow the position and character of the duties of the agent as shown by the evidence, and wholly disregards his authority, except as foreman, merely, is properly refused in such case. The general authority of the agent is the material fact involved in the relation between him and the plaintiff, and an instruction based on a statement as to a part of his duties, authority and control, does not correctly state a rule of law applicable to the case.

4. SAME—*recovery for injury from service known by servant to be dangerous.* If a servant enters into the employ of a master knowing the manner in which the business is conducted, and knowing the hazard of the employment, and is injured, he can not recover from the master for such injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury.

5. To the rule above there are exceptions. If the master, on being notified by the servant of defects that render the service he is engaged to perform more hazardous, expressly promises to make the needed

148 573
155 215

148 573
162 460
162 493
53a 622
54a 49
56a 238

148 573
59a 37
61a 666

148 573
63a 170
63a 629

148 573
67a 70
67a 338
68a 250

148 573
170 209
170 213

148 573
75a 474

148 573
175 479
176 274

148 573
179 513

148 573
185 575
88a 173

148 573
90a 7595

148 573
d94a 3 99
94a 3276

148 573
97a 5127
97a 3628

148 573
193 7333

148 573
196 9385

148 573
199 7187
102a 7354

148 573
200 7285

148 573
e105a 5266

148 573
203 7503
206 5205

148 573
207 9460
207 7581
110a 678

148 573
211 7227

repairs, the servant may continue in the employment a reasonable time to permit the performance of a promise in that regard without being guilty of negligence, and if any injury results therefrom to the servant he may recover of the master, unless where the danger is so imminent that no prudent person would undertake to perform the service. The reason for this exception is, that when the master has knowledge of the defects, and promises to repair the same, he impliedly requests the servant to continue to work, and that he, the master, will take upon himself the responsibility of any accident that may occur during that period.

6. Another well recognized principle exists that may be considered as engrafted on and a modification of the exception to the rule, and that is, if the danger from continuing in the master's service is so imminent that no one but one utterly reckless of his personal safety would continue in the service under the circumstances, it would be such negligence to continue in such service as would bar a recovery.

7. SAME—*master's liability to servant when the latter is injured while acting in obedience to the orders of the former.* Where an act is performed by a servant in obedience to a command from one having authority to give it, and the performance of the act is attendant with a degree of danger, it is not requisite that such servant shall balance the degree of danger, and decide with absolute certainty whether he must do the act or refrain from it; and his knowledge of attendant danger will not defeat his right of recovery, if, in obeying the command of the master, he acted with that degree of prudence that an ordinarily prudent man would have done under the circumstances.

8. Where an agent of a corporation having general power to employ and discharge employes and to direct and control them, directed one to work in a dangerous place, and the latter protested that it was dangerous to work in such place, but was assured by the agent that there was no danger, and the servant was thereby induced to work in such place, and the agent had superior means of knowing the condition of the place as to safety, it was *held*, that the servant had the right to assume that the agent had not misrepresented the probability of danger, and when the servant is not a fellow-servant with the agent, and is injured while working in such place, the servant injured may recover from the master for the injury he has sustained.

9. SAME—*questions of fact as to negligence.* The questions as to the knowledge of the defect by the master, whether he promised to repair, and whether the servant continuing in the service did so when the danger was so imminent that none but a person utterly reckless of his personal safety would continue in the service, are all questions of fact, to be determined by the jury. The only principle of law to be applied exists with reference to the last question, and that is, whether, in continuing in the service under the circumstances, the servant acted as a

reasonably prudent person would, having reference to his own personal safety.

10. CORPORATIONS — *agent, when representative of.* Corporations must necessarily act by or through agents, and one having delegated authority to employ and discharge laborers, superintend their work, and general control, under general power and instructions, may be regarded as the representative of a corporation charged with the performance of its duty.

11. SAME—*when chargeable with negligence of its agent.* The acts of such an agent are the acts of the corporation, and when he is exercising that control and superintendence, and governing and directing the movements of those under his charge, within the scope of his authority, his acts, commands or negligence are the acts, commands or negligence of the corporation he represents.

12. INSTRUCTION—*limiting recovery to only a part of the evidence.* In an action by a servant against his employer for damages for an injury received in consequence of his working in a place of danger upon the command of the defendant's general agent having authority to give such command, an instruction asked by the defendant seeking to take away the effect of the agent's authority, and to have the court determine the right of recovery against the plaintiff by reason of his doing the work with knowledge of the unsafe condition of the place where he was directed to go, upon assurance that it was safe, by the defendant's agent in charge of the work, will be properly refused.

13. SAME—*form, as to belief from the evidence.* After the statement of the facts upon which an instruction was based, the court modified the same by adding the words, "if such is the fact" you will find, etc.: *Held*, that the modification was not subject to the objection that the jury would be led to believe the burden of proof was changed to the party complaining, and that it amounted to an instruction that the evidence must be satisfactory to the jury, and that the modification was not error.

14. SAME—*misleading and involved.* An instruction which attempts to state a conclusion of law resulting from the finding of a fact, and states what is to be found as a fact as a rule of law, is misleading, and properly refused.

15. SAME—*time of presenting to the court.* Where no rule of court, in writing, limiting the time within which instructions shall be presented to the court, is shown, the refusal of an instruction can not be held proper because not presented in time.

16. PRACTICE—*rules of court.* A rule of court can only exist in writing of record, and when thus adopted it has the force of law. When so announced it is applicable to all cases without discretion, unless the power to exercise discretion is reserved in the rule itself.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. FOWLER BROS., and Mr. DANIEL EVANS, for the appellant:

If a servant, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he can not recover merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury. *Simmons* v. *Railroad Co.* 110 Ill. 340; *Pennsylvania Co.* v. *Lynch,* 90 id. 335; *Railway Co.* v. *Britz,* 72 id. 261; *Pennsylvania Co.* v. *Backes,* 133 id. 262; *Stafford* v. *Railroad Co.* 114 id. 247; *Rolling Stock Co.* v. *Wilder,* 116 id. 100; *Clark* v. *Railroad Co.* 92 id. 43; *Railway Co.* v. *Watson,* 5 Am. Stat. 578; 114 Ind. 20.

The employe undoubtedly has the right to act upon the assumption that the employer has used and will use ordinary care to provide safe appliances and a safe place in which to work, but when the employe becomes fully informed of danger he has no right to longer act upon that assumption. It is manifest that one who knows a duty has not been performed can not act upon the presumption that it has been performed. *Pennsylvania Co.* v. *Whitcomb,* 111 Ind. 212; *Railway Co.* v. *Dailey,* 110 id. 75; *Railroad Co.* v. *Stupak,* 108 id. 1.

Even if there be a promise by the employer to remove the danger, the employe must not subject himself to great and imminent danger. When the line of danger is reached, direct and certain, the servant must stop, and he can not pass it over on the faith of another's promise. *Coal Mining Co.* v. *McNally,* 15 Ill. App. 181; *Railroad Co.* v. *Flanigan,* 77 Ill. 365; *Railroad Co.* v. *Geary,* 110 id. 383; *Stafford* v. *Railroad Co.* 114 id. 247; *Provision Co.* v. *McElroy,* 29 Ill. App. 504; *Naylor* v. *Railroad Co.* 53 Wis. 661; *Clark* v. *Railroad Co.* 92

Ill. 43; *Pennsylvania Co.* v. *Lynch,* 90 id. 333; *Manufacturing Co.* v. *Ballou,* 71 id. 418; *Marcy* v. *Coal Co.* 55 Iowa, 671; *Hughes* v. *Railroad Co.* 27 Minn. 137; *Railroad Co.* v. *Ward,* 61 Ill. 130; *Railway Co.* v. *Troesch,* 68 id. 546; *District of Columbia* v. *McElligot,* 117 U. S. 117; Shearman & Redfield on Negligence, (4th ed.) sec. 91.

When a servant enters into or continues in employment with notice of defects and knowledge of extraordinary risks, he is deemed to have assumed such additional risk. *Carbine* v. *Railroad Co.* 61 Vt. 348; *Smith* v. *Railroad Co.* 51 Minn. 87; *Goodwin* v. *Emery Mills,* 146 Mass. 261; *Young* v. *Railroad Co.* 79 Iowa, 415; *Vaughin* v. *Railroad Co.* 83 Cal. 18.

Notwithstanding the promise of the master to remove the defect that renders the service hazardous, the servant, in remaining, must not expose himself recklessly. He must exercise ordinary prudence in exposing himself to danger. *Ball* v. *Leather Co.* 73 Mich. 158; *Patterson* v. *Railroad Co.* 76 Pa. St. 389; *Simmons* v. *Railroad Co.* 110 Ill. 347; *Railway Co.* v. *Ward,* 61 id. 130; *Railroad Co.* v. *Troesch,* 68 id. 546; Thompson on Negligence, 1008.

Keily did nothing to render the service more dangerous than it was known by appellee to be. *Clark* v. *Railroad Co.* 92 Ill. 43; *Ballou's case,* 71 id. 418; *Britz's case,* 72 id. 261.

Messrs. DUNCAN & GILBERT, and Messrs. O'CONNER, DUNCAN & ECKELS, for the appellee:

The right to recover in this case is placed upon the ground that Keily was the representative of the appellant company, and that he, knowing the unsafe condition of the clay bank for two days, at least, ordered and commanded the appellee to enter and work therein, answering appellee's expressions of fear by assurances that it was all right. *Pennsylvania Co.* v. *Lynch,* 90 Ill. 333; *Lalor* v. *Railroad Co.* 52 id. 401; *Hawley* v. *Railway Co.* 82 N. Y. 370; Wood on Master and Servant, sec. 178.

Mr. Justice Phillips delivered the opinion of the Court:

This action was brought by appellee, against appellant, in the circuit court of LaSalle county, to recover for personal injuries sustained in consequence of the fall of a bank under which appellee was mining clay. Appellant was engaged in the manufacture of pressed brick in the city of Chicago at and for some years prior to the time the appellee was injured. Its office was in that city, as were also its officers. Appellee had been at work for appellant between four and five months prior to June 2, 1887, when he was injured while working in a pit, with a number of others, procuring clay for the use of appellant at its factory at Chicago. The clay was taken from the side of a bluff near LaSalle, Illinois. There had been opened along the bluff, from four to six hundred feet, a pit, and from the bottom of that pit to the surface at the top was about thirty feet. The clay lay in strata, and that which was mined and shipped to Chicago was called No. 1, and was about ten feet in thickness from the bottom of the pit. Above this was a stratum of clay of about the same thickness, and above that about the same depth of inorganic matter. From the surface shrubs, grass and trees grew, and near the surface were many spreading roots. Ever since appellant had been mining this clay, the custom had been to blast or otherwise loosen or dig out the No. 1 clay, and when sufficient clay had been taken out, the bank above would slide down or was pried or blasted off, throwing it down on the floor of the pit, from whence it was removed as worthless. As the blasting out and removal of the clay from beneath progressed, the bank above would project more and more, until it would slide down or be forced off by prying or blasting. In this way the undesirable portion was disposed of from below, and was not stripped off from the surface. The clay, when mined, was loaded into dump-carts and hauled to canal-boats, by which it was taken to Chicago. John Keily was superintendent of the work, and had entire

charge of it. He hired and discharged the men, kept their time, directed and controlled their work, and was the only officer or representative of appellant exercising such control or present where the work was carried on, and was in the sole and exclusive control. On June 2, 1887, the clay at the place of the accident had been taken out so that the bank above projected about ten feet. On the day previous, one of the drivers (Early) refused to drive under the overhanging bank, and Keily told him to go up on top and put it down. Early went up on the bank where a crack had been opened about four inches wide between it and the hill, but it was held from falling by roots connecting it with the hill. Early tried to loosen it with a crow-bar, but was ordered by Keily to come down and attend to his cart, and did so. Early said the bank would come down, and Keily said it would not, and Early returned to his cart, but refused to drive under the bank. He was not at work at that point, but he would not drive under it when coming out. On June 2, at the noon hour, Michael Boyle, who had charge of the blasting, fired a blast in the clay beneath this overhanging bank, and immediately afterward the men went to work. Boyle called Keily's attention to the bank, and told him that it was not safe, and that he had better take the bank down before he put any men under there to work. Keily replied that he wanted to get that clay out before the surface material should come down and dirty all the clay,—that he could get plenty of men, but he wanted to get the clay out. One cart was loaded after dinner, and Keily's son, who was driving a cart, backed up at the spot where the accident happened. The shovelers were standing there, and appellee was among them, and there was some reluctance manifested to going under the bank. Keily told them to go in, and to hurry up and load up the cart. The custom was to have one shoveler on each side and one in the rear of the cart. Appellee commenced shoveling from one side of the cart, and there was a difficulty among the men as

to who should go behind it, there being two at the side where appellee was. Keily told appellee that his place was behind the cart, and ordered him to go there. Appellee objected on account of the dangerous condition of the bank, and said that if it should come down it would kill a man. Keily assured him that the bank was all right, and appellee, still fearing danger, went behind the cart. Keily had told his son, who was driving the cart, that if he got the word to drive out, he should drive out quickly. Appellee had put in about three shovels of clay when the bank fell. Keily gave the word and his son drove out, and the men at the side of the cart escaped, but the bank fell on appellee, who was in a more dangerous position, and he was seriously injured.

A trial resulted in a verdict for $8500, when defendant entered a motion for a new trial. A remittitur of $2500 was entered, and the motion for a new trial was overruled, and a judgment entered for appellee in the sum of $6000. That judgment was affirmed on appeal to the Appellate Court, and the appellant prosecutes this appeal.

The 7th, 11th, 12th, 13th, 14th and 15th instructions asked by appellant were on the theory that the defendant would not be liable for any injury sustained by the plaintiff by reason of the carelessness or negligence of other employes associated with him and in the same line of employment. The refusal of the 12th, and the modification of the 7th, 11th, 13th and 14th, are assigned as error.

Corporations must necessarily act by or through agents. One with delegated authority to employ and discharge laborers, superintend their work, and generally direct and control, under general power and instructions from the corporation, may well be regarded as the representative of the corporation charged with the performance of its duty. The acts of one, in such case, are the acts of the corporation, and where one is exercising this control and superintendence, governing and directing the movements of those under his charge, within the

scope of his authority, his act, command or negligence is the act, command or negligence of the company. To one employed by him in such capacity, and who is working under his supervision, he stands in a superior relation, and between such representative of the corporation and one employed by him to work subject to his command and supervision, the relation of fellow-servants does not exist. *Chicago and North-western Railroad Co.* v. *Moranda,* 93 Ill. 302; *Chicago and Alton Railroad Co.* v. *May,* 108 id. 288.

Under the evidence in this case, John Keily was the representative of the corporation, and as to the work and control of the men employed by him in conducting their work may be regarded as the general agent of the company, and the 12th instruction sought to instruct the jury that if Keily was acting as foreman at the time plaintiff was injured, that fact did not prevent the plaintiff and Keily from being servants in the same line of employment or render the corporation liable. As asked, this instruction sought to narrow the position and character of the duties of Keily, as shown by his evidence, and wholly disregarded his authority, except as foreman, merely. His general authority and control was the material fact involved in the relation between him and appellee, and an instruction based on a statement as to a part of his duties, authority and control, did not correctly state a rule of law applicable to the case. Plaintiff's right of recovery was placed upon the ground that Keily was the representative of the company, with knowledge of the unsafe condition of the bank, and ordered the plaintiff to work under it, and to plaintiff's expressions of fear gave assurances that it was all right, and gave repeated orders to him to hurry up and load the cart.

As between master and servant, it is a settled rule of law that if the servant enters into the employ of the master knowing the manner in which the business is conducted, and knowing the hazards of the employment, and is injured, he can not recover against the master for such injury on the mere ground

that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury. *(Chicago and Eastern Illinois Railroad Co.* v. *Geary,* 110 Ill. 383; *Simmons* v. *Chicago and Tomah Railroad Co.* id. 347.) But to this rule there are exceptions. In stating one of these exceptions in *Missouri Furnace Co.* v. *Abend,* 107 Ill. 44, it was said: "It is now uniformly stated by text writers, that where the master, on being notified by the servant of defects that render the service he is engaged to perform more hazardous, expressly promises to make the needed repairs, the servant may continue in the employment a reasonable time to permit the performance of a promise in that regard without being guilty of negligence, and if any injury results therefrom he may recover, unless when the danger is so imminent that no prudent person would undertake to perform the service. The doctrine on this subject rests on sound principle, and it will be found to be supported by English and American decisions. The reason upon which the rule is said to rest is, that the promise of the master to repair defects relieves the servant from the charge of negligence by continuing in the service after the discovery of the extra perils to which he would be exposed." This exception to the rule has frequently come before this court, and has as often been held sufficient to sustain a recovery by the servant against the master for injury received under such circumstances. The reason for this exception may be stated to be, that when the master has knowledge of the defects and promises to repair the same, he impliedly requests the servant to continue to work, and that he, the master, will take upon himself the responsibility of any accident that may occur during that period. *Holmes* v. *Clark,* 7 Hurl. & Norm. 348, cited approvingly in *Missouri Furnace Co.* v. *Abend, supra.*

Another well recognized principle exists that may be considered as engrafted on and a modification of the exception to the rule, and that is, if the danger from continuing in the

master's service is so imminent that no one but one utterly reckless of his personal safety would continue in the service under the circumstances, it would be negligence to continue such service that would bar a recovery. The questions as to the knowledge of the defect by the master, whether he promised to repair, and whether the servant continuing in the service did so where the danger was so imminent that none but a person utterly reckless of his personal safety would continue in the service, are all questions of fact to be determined by the jury. The only principle of law to be applied exists with reference to the last question, and that is, whether, in continuing in the service under the circumstances he acted as a reasonably prudent person would, having reference to his own personal safety.

Questions arise whether the action of a servant is his voluntary act, or done in obedience to the commands of the master or one in authority over him. When an act is performed by a servant in obedience to a command from one having authority to give it, and the performance of the act is attendant with a degree of danger, yet in such case it is not requisite that such servant shall balance the degree of danger, and decide with absolute certainty whether he must do the act, or refrain from it; and his knowledge of attendant danger will not defeat his right of recovery, if, in obeying the command, he acted with that degree of prudence that an ordinarily prudent man would have done under the circumstances. *Greenleaf* v. *Iowa Central Railroad Co.* 29 Iowa, 14, was an action brought to recover damages in causing the death of a brakeman because of a defective car, and it was said: "Though decedent knew of the defective car, if he acted under instructions and directions of a superior, the action would by no means thereby be defeated. Under such circumstances, compelled, as he necessarily would be, to act with promptness and dispatch, it would be most unreasonable to demand of him the thought, care and scrutiny which might be exacted

when there is more time for observation and deliberation." In *Snow* v. *Housatonic Railroad Co.* 8 Allen, 441, plaintiff stepped into a hole in the road-bed while uncoupling cars while the train was in motion, and was injured, and it was held his previous knowledge of the defect, and continuing in the service with that knowledge, would not defeat a recovery. In *Patterson* v. *P. & C. R. R. Co.* 76 Pa. St. 389, it was held: "If the instrumentality by which he is required to perform his service is so obviously and immediately dangerous that a man of common prudence would refuse to use it, the master can not be held liable for the resulting damage. In such case the law adjudges the servant guilty of concurrent negligence, and will refuse him that aid to which he would otherwise be entitled. But when the servant, in obedience to the require-ment of the master, incurs the risk of machinery which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable it may be safely used by extraordinary caution or skill, the rule is different. In such case the master is liable for a resulting accident."

In this case, for more than four months the plaintiff had been in the employ of this defendant. Employed to perform service by Keily, he had, during his employment, looked to Keily for orders, and those were the only commands received by him. He was not on the same footing with the master or its agent. His primary duty was obedience, and if, in discharge of that duty, he was injured, it is obviously just and proper, and is but meet, that he should be recompensed. Whilst be-lieving that it was dangerous to go under the projecting bank, and protesting to the agent of the defendant that there was danger, yet the agent sought to allay his fears and induce obedience to his commands by declaring that there was no danger of the bank falling. Keily had superior opportunities of knowing the condition of the bank and had superior experi-ence, and the servant had the right to assume that the fore-man would not misrepresent the probability of danger, and

order him into a place dangerous to life and limb. Acting on that command, under the circumstances surrounding, and the declarations of the agent of safety, and going to the place ordered by the foreman, were facts presented to the jury on which they should find whether the act of the plaintiff in going under the bank, behind the cart, to shovel, was a reckless act, or whether it was such as might have been done by a reasonably prudent person acting with reference to his own personal safety. Their finding on that question was, that under the circumstances it was such an act as might have been done by a reasonably prudent person acting with reference to his own personal safety. That finding was affirmed by the Appellate Court, which conclusively settles the question of fact that on that finding plaintiff would be entitled to recover.

The 4th instruction was refused. That instruction, as asked by the defendant, sought to take away all results of the command of Keily, and have the court determine the right of recovery against the plaintiff by reason of his doing the work with knowledge of the unsafe condition of the bank.

The 18th instruction asked by the defendant was refused. It took a part of the direction given by Keily with reference to the work, and attempted to draw a legal conclusion therefrom. It was neither correct in its statement of fact nor in the legal conclusion sought to be drawn.

The 20th instruction, which was refused, was objectionable for the same reason as the 18th.

Exception is taken to the modification of instructions 16, 19, 21, 22 and 25. These instructions asked, substantially, that if the plaintiff went to work, in obedience to Keily's orders, with knowledge of the unsafe condition of the bank, the order would not relieve plaintiff from the exercise of due care and caution, and if he knew he was incurring the risk of the fall at the time he went to work, he could not recover. Each of these instructions was modified by inserting, "and if a reasonably prudent person, under the circumstances proved,

would not have gone to work when and where plaintiff did."
The modification of each of these instructions was in accord-
ance with the rule heretofore discussed, and was not error in
that regard.

Exception is taken to the fact that the 7th, 8th, 9th, 10th,
16th, 17th, 21st, 22d, 23d, 24th and 25th instructions were
modified by the insertion, after the statement of facts, of the
words, "if such are the facts" you will find, etc., and it is
urged that by the insertion of these words the jury would be
led to believe the burden of proof was changed, and thrown
on the defendant, or that it amounts to an instruction that
the evidence must be to the satisfaction of the jury. In each
of these instructions certain facts were stated, and a certain
result followed, as a matter of law, if the facts were found as
stated. Whether the instruction is, "if the jury find, from
the evidence, that the facts are," or whether, after the state-
ment of facts, the jury are directed that "if such are the facts"
certain conclusions of law result, we can not see that the re-
sult would follow as apprehended by counsel for appellant,
and such modification was not error.

Certain modifications of the 2d and 6th instructions are
complained of, but they are of slight character, and we find
no error in the same.

The 26th instruction was refused because it was not pre-
sented in time. It does not appear that any rule of court, in
writing, existed, limiting the time within which instructions
should be presented. A rule could only exist in writing of
record, as, when thus adopted, it has the force of law. The
rule could not exist in the breast of the judge alone, but must
be announced as a rule made of record, and is then applicable
to all cases without discretion, unless an exercise of discretion
is reserved in the rule. The necessity for announcing and
recording is that it may be known. We can not hold that
the instruction was properly refused because not presented in
time, but we are of the opinion that it was not error to refuse

the same.   The first part of .the instruction, with reference
to the burden of proof, is followed by the statement that if
the jury believe, from the evidence, that what Keily said to
plaintiff was not a command, or did not coerce plaintiff, but
was only a direction given to all the men, including plaintiff,
as to what they should work at, and was of such a character
as left the plaintiff free to refuse to go into the pit until the
bank was made safe, then whatever Keily said was not a
command or coercion that would make the company liable, on
the theory that the defendant was negligent in commanding
or coercing plaintiff into a place of danger.   The instruction
is involved and misleading.   The conclusion of the instruc-
tion in stating a conclusion of law resulting from the finding
of a fact states what is to be found as a fact as a rule of law,
and was therefore so misleading that it was not error to re-
fuse it.

   We find no error in the record for which this judgment
should be reversed.   The judgment is affirmed.

*Judgment affirmed.*