## John Hass v. The Chicago, B. & Q. R. R. Co.

1. MASTER AND SERVANT—*Reciprocal Duties*.—A servant is bound to exercise ordinary care for his own safety and must notice dangers which are apparent, but he need not hunt for hidden perils. The master is bound to exercise reasonable care to provide reasonably safe appliances for the use of the servant and a reasonably safe place for the doing of his work.

2. SAME—*Rights of the Servant in Obeying the Commands of the Master—Reciprocal Duties*.—When a servant is commanded by one having the right to give him orders, to do an act obviously attended with danger, he has a right to assume that his master has exercised reasonable care to make the act reasonably safe, and that it is not attended with hidden perils of which the master had notice.

3. SAME—*Duty of the Master to Watch for that Which is Not Necessarily Obvious and of the Servant Not to Overlook the Apparent*.—The master should, to a reasonable extent, watch for and find that which is not necessarily obvious, while the servant can not overlook that which is apparent, and if ordered to do a particular thing the servant has a right to assume that he will not be unnecessarily exposed to perils, and may rely upon the implied assurance that there was no unnecessary danger.

4. SAME—*Duty of the Master to Use Reasonable Diligence in Making the Place Where His Servant Works Reasonably Safe—Illustration*.— Where a wrecking crew in the employ of a railroad company and in charge of a foreman, was engaged in placing a derailed locomotive upon the track, one of them called the attention of the foreman to the improper position of a timber used to support the locomotive, but he paid no attention to it, and ordered the man to return to his work, which he did and in consequence was injured, a verdict for the company was reversed.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed and remanded. Opinion filed November 1, 1901.

Statement.—This action was brought by appellant to recover from appellee for injuries sustained by him while working for appellee.

Appellant had been working for appellee at Chicago, Illinois, for about three years and a half prior to the accident, as a member of a wrecking crew, and doing work similar to that on which he was engaged at the time of the accident.

The accident happened September 12, 1894. On that morning he was called, with other members of the wrecking crew, to help replace an engine of appellee which was off the track. To do this a heavy timber about ten by ten was placed upon a cross-beam of the engine in front of the boiler. The timber and beam were fastened together by a chain, and jacks were placed under the end of the timber which was allowed to project some three or four feet beyond the side of the engine, and in this way the engine was gradually raised up. As soon as the engine was raised far enough to permit it, planks were placed under the wheels.

Appellant, as directed, was engaged in placing a plank under the wheels when the timber split at the end where the jacks were placed, and the engine fell back into its old position, appellant being struck on the back and head, sustaining injuries for which the suit was brought. At the conclusion of the plaintiff's case the court instructed the jury to find a verdict for the defendant. Upon the trial appellant testified as follows:

" I was working as a car repairer that day. I commenced work that day at seven o'clock at the round-house of the company at Archer avenue and Sixteenth street. At one o'clock we got an order to go to the wreck, given us by a man named Nelson. We went over to the engine which was off the track. It was about a block away from where we had been employed. Nelson was the boss or superintendent over the work. When we got to the place where the engine had fallen, he said, ' Now everybody has got to do his own work here.' We then took this timber and laid it down, and one end we tied with a chain, and after that four jacks were put underneath and one side was raised up. The timber was put across the locomotive under the boiler.

When we placed this timber upon this engine, on this insul, we left a piece of this timber out far enough so we could put the four jacks under, then we took a chain and fastened this timber, and then we raised it up so the whole side hung on this timber. He told me that I should block the wheels. I took one plank and put it under one of the wheels, but when I took the second one it had already slipped. Before the engine fell I spoke to the foreman

about the way the work was being done. I told him it was 'humbug;' that it would slip. He then said to me, ' Go ahead and do your work.' Nelson was the boss who was directing the work all the time up to the time of the accident. The foreman told every one what was to be done.

Q. Now, what, if anything, was said after this timber was put under the projection and the jack screws were put under the timber, about the method of the work being dangerous? Give the whole conversation that you heard. A. The foreman said, ' Well you raise this up, so after you get it raised up we can pull it out.'

Q. Did any one say anything to him about danger, if so, what was it? A. I told him myself, the boss, because he put me in the worst place.

Q. What did you say to the boss about danger? A. I told him that would slip; that won't go.

Q. What was said to the foreman there by you, or by any one else, that the work was dangerous the way the foreman ordered it? A. After the engine had hung, the foreman said, ' Now you go to work.'

Q. What do you mean by the engine being hung? A. I mean the side that was down we raised it up, and the whole side hung on this timber.

Q. Did any one say anything to the foreman about the work being dangerous? A. I told him myself.

Q. What did the foreman say? A. He said I should go to work.

Q. What took place? A. When I went to work I took one plank and laid that down, and then I took the second one; when I turned around the engine fell. I was not touching the engine at the time it fell, I was getting a plank that my partner fetched me. I was not touching the jack screws. The front of the engine was toward the east and the north side fell.

Q. How did the engine come to fall? A. Because the timber was not exactly lying upon this insul. It didn't project very much.

I mean that the beam or squared timber didn't lie squarely on this insul.

When the engine fell, some of the jacks fell on one side and some to the other. The timber split. This timber we got from the wrecking car. When the timber is placed on the engine it projects three feet outside of the engine so we can put the jacks under; the timber is square, ten by ten, and it projects half way across the engine boiler—locomotive boiler. The timber split at that part which rested on the

insul or projection of the boiler. It is a part which is screwed to the boiler on the engine and projects a little in front of it. The timber was held in place by a chain; it tied or fastened the insul to the timber.

The timber that I spoke of is marked in red on the picture. It split because it only laid half-way on the insul and it didn't have strength.

Q. When you told the foreman that the way of doing things there was all 'humbug,' what did you mean? A. Well, I saw that the timber was resting on the insul, only half of it was, and I saw there would be some 'humbug.'

Mr. Dawes: I will assume, if you want to, that 'humbug' means some danger.

Mr. Maher: Very well.

Mr. Maher: Did you say anything else to the foreman?

A. Well, I didn't say anything else except that I said, that will not be well, and we will have some 'humbug' here, and he said, 'Oh, well, just go to work.' When the locomotive fell I got a blow on my back and on the left side of my head and back of my head. I was unconscious for over an hour. I was taken home to Seventeenth street and stayed there over a year.

Q. When you told the foreman at the time of the accident that the timber was not squarely on the insul, that there would be 'humbug,' did you mean that an accident would happen and somebody would get hurt? that is what you said, wasn't it, and what you meant?

A. Yes, that is what I said to the foreman; I say—

Q. What else were you going to say? I say this, that somebody would get hurt.

Q. You could see that the timber might slip off the insul? A. Yes.

I was a member of the wrecking crew and I used to jack up engines and cars when they would be wrecked."

The court instructed the jury to find for the defendant.

EDWARD MAHER, attorney for appellant.

CHESTER M. DAWES and JOSEPH A. CONNELL, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

A servant is bound to exercise ordinary care for his own safety; he must notice dangers which are apparent but he need not hunt for hidden perils.

The master is bound to exercise reasonable care to provide reasonably safe appliances for the use of his servant and a reasonably safe place for the doing of his work. The servant has a right to rely upon the discharge by the master of this duty.

When a servant is commanded, by one having a right to give him orders, to do an act obviously attended with danger, he has a right to believe that the master has exercised reasonable care to make the act reasonably safe, and that it is not attended with hidden perils of which the master has notice. So far as noticing danger is concerned, it is the duty of the master to with reasonable diligence look for it—that of the servant to see that which is obvious.

The master should, to a reasonable extent, watch for and find that not necessarily obvious, while the servant can not overlook the apparent.

If ordered to do a particular thing the servant has a right to assume that he will not be unnecessarily exposed to perils, and he may rely upon the implied assurance that there is no unnecessary danger. Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573; Illinois Steel Co. v. Schymanowski, 59 Ill. App. 32, 162 Ill. 447; Chicago Edison Co. v. Mary Moren, 86 Ill. App. 152; 185 Ill. 575.

In the present case there was evidence tending to show that the timber made use of was improperly placed by the superior of appellant and that as a consequence it split, letting the engine fall upon appellant, who was then doing what he had been directed.

The attention of the foreman had been called to the improper position of the timber, but he paid no attention to the warning and ordered appellant to the place where he was injured.

There was evidence tending to show a failure upon the part of appellee to use reasonable diligence to make the appliances with which and the place in which appellant worked reasonably safe, and that in consequence thereof he was injured.

The evidence did not present a case, merely, of an injury from a peril that could not, with reasonable care, have been

ascertained, nor of one in which there was no evidence from which the jury could have found any such negligence as was charged in the declaration.

The judgment of the Superior Court is reversed and the cause remanded.