## Village of Montgomery v. Robert Robertson.

### Gen. No. 4,779.

1. MASTER—*when liable for injury to servant.* A master is liable to an inexperienced servant who performs work at the direction of a superintendent representing the master after having received assurances of safety from such superintendent.

2. INSTRUCTION—*particular phrase held improper.* *Held,* that the phrase, "if the defendant was otherwise without fault," as used in an instruction tendered but refused, was improper.

Village of Montgomery v. Robertson.

Action in case for personal injuries. Appeal from the Circuit Court of Kane county; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed March 13, 1907. Rehearing denied and opinion modified April 10, 1907.

ALDRICH & WORCESTER and F. W. HARTSBURG, for appellant.

W. J. TYERS, E. M. MANGAN and MURPHY, ALSCHULER & CLYNE, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Appellee was an employe of appellant, shoveling gravel into a wagon at the foot of a gravel bank, in September, 1904. The bank caved in, and caught him against the hind wheel of the wagon, and he was seriously injured. He brought this suit against appellant to recover damages therefor. He recovered a verdict and a judgment for $1,500. As it is not claimed that the verdict was excessive, we need not describe his injuries and their subsequent treatment and effect. The declaration contained five original and three additional counts. They charged that it was a dangerous and unsafe place in which to work; that that fact was known to appellant and was unknown to appellee; that appellant should have warned appellee thereof, but did not; that there was a weight of clay above the gravel which appellant ought to have removed before taking gravel from underneath, and did not; that appellant should have furnished appellee a reasonably safe place in which to work, and reasonably safe appliances with which to work, but did not; that appellant wrongfully and negligently maintained and operated said gravel pit; that a pole extended out at the rear of the wagon which appellee was loading and rendered it an extra hazardous place in which to work; that appellee complained to appellant thereof, and appellant promised to remove said pole, and appellee relied upon that prom-

ise, but it was not removed; that appellant placed said wagon an unreasonably unsafe distance from the wall of the pit, so that the shovelers were in great danger of being injured if the gravel caved in; and each count described the injuries to appellee and charged that they were caused by the negligence of appellant set forth in such count. Appellant pleaded the general issue.

Appellee was a common laborer, and had worked for appellant but a few days. He first worked on the streets; then in a low gravel bed, where the wall was perhaps four to six feet high, and there was no danger from caving in, and on Wednesday morning he and another shoveler and three teamsters with their teams and wagons were taken to the deep and long gravel pit in question. Appellee and others spent most of the forenoon in stripping off the earth on top for some distance back from the face. Then a team was driven next to the face at the foot of the bank, and the teamster and the two laborers shoveled gravel into the wagon until it was full, when it was drawn out and another took its place. Underneath the earth on top, which was removed, was a bed of clay about a foot or eighteen inches thick, underneath this was fine gravel, and below that the coarser gravel. The fine gravel was not the best for the streets, and so appellant caused the clay not to be removed, but to be left to come down and mix with the fine gravel directly underneath it, the combination being better for the streets. But this clay was heavy and increased the danger of caving. Appellant's superintendent of streets was there directing the work on Wednesday and Thursday, but had not come Friday morning when appellee was injured while shoveling in the second wagonload. Thursday morning appellee and perhaps the others broke down the bank, but this had not been done on Friday morning.

Appellant contends that the risk and danger were

obvious to any one, and were therefore assumed by appellee; that if the wagon was too near the face of the pit, appellee knew it and assumed the risk; that if the wagon was too near, it was placed there either by appellee or by his fellow-servants, in the absence of appellant's superintendent, and therefore appellant would not be liable; that the wagon reach did not extend so far to the rear of the wagon as to increase the danger, and that if it did appellee assumed the risk therefrom, and was not, in fact, prevented by it from escaping. We have read the evidence with care, and are impressed with the force of much of appellant's argument, and should not reverse a judgment for appellant, if one had been rendered. But there is proof which these arguments do not wholly overcome. Appellee had not worked in a gravel pit before and therefore had no experience with its dangers. About half-past two or three o'clock Thursday afternoon appellee called the attention of appellant's superintendent to the fineness of the gravel and to the nearness of the face of the pit to the teams, and to the extra length of one wagon reach, and asked him if he thought it was safe to work so close to the bank. This was after the bank had been broken down that day. The superintendent went upon the top of the bank and looked at it. Appellee at first testified that the superintendent did not say whether it was safe or not, but on cross-examination he testified the superintendent told him it was safe. He also told appellee he would see to the reach, and directed appellee to go back to work, which would naturally be understood by appellee as an assurance that it was safe to work that close to the bank. It also appears from appellant's proof that the superintendent directed that the bank be kept straight, and from appellee's proof that the bank was straight on Friday morning just before it caved in. There was no proof the bank was then overhanging or that the face had been undermined. This proof is substantially un-

disputed. The superintendent had died before the trial, but that does not authorize us to assume that if he had been living he would have denied this proof. The proof also tended to show that appellee would have escaped but for the extra length of the reach projecting back of the wagon, which the superintendent had promised to remedy; that the reach projected so far back and so close to that part of the bank which was directly behind the wagon that appellee, when confronted with the sudden danger, did not dare to try to escape that way, but in his haste undertook to climb up the hind wheel, and was caught. Appellant introduced proof that at five o'clock the night before a crowbar was delivered to appellee with directions from the superintendent to keep the bank broken down, but appellee denies this and a question of fact was thus raised for the jury.

Under this proof of plaintiff's lack of experience in this work, and of this assurance and direction from the superintendent, and a verdict for plaintiff, we conclude that the principles laid down in Chicago Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573; City of LaSalle v. Kostka, 190 Ill. 130; Western Stone Co. v. Muscial, 196 Ill. 382; Barnett & Record Co. v. Schlapka, 208 Ill. 426, and also laid down in the same cases when in this court, are fairly applicable, and that we should not reverse the judgment upon the facts.

No complaint is made of the rulings of the court upon the evidence. No instructions were given for appellee. Fifteen instructions were given for appellant. Complaint is made of the refusal of four instructions requested by appellant. Each of the refused instructions singled out some one branch of the case, and said that if the jury found the facts upon that subject as appellant claimed them to be, and "if the defendant was otherwise without fault," the jury should find appellant guilty. We think this method of calling attention to one feature only of the evidence

and of the various allegations of the parties, is calculated to mislead the jury. All that was proper in each of these instructions was but an enlargement or application of a principle fully stated in appellant's given instructions. By these given instructions the law applicable to the case from appellant's standpoint was fairly and fully stated. We conclude there was no error in refusing said four instructions, when the given instructions are also considered.

The judgment is, therefore, affirmed.

*Affirmed.*

Mr. Justice WILLIS, having presided at the trial of this case in the lower court, took no part in its decision here.