# John R. McShane, Administrator, Appellee, v. Joseph Hanreddy et al., Appellants.

## Gen. No. 16,119.

1. NEGLIGENCE—*failure to protect from falling material.* Whether or not the leaving of work unguarded and uncovered from falling material constitutes negligence is a question of fact for the jury.

2. MASTER AND SERVANT—*what essential to application of doctrine of assumed risk.* Mere notice of defects is not sufficient to charge a servant with an assumed risk; he must have knowledge of the danger as well.

Appeal from the Superior Court of Cook county; the HON. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed on remittitur. Opinion filed February 13, 1912. Remittitur filed February 14, 1912. *Certiorari* denied by Supreme Court (making opinion final).

F. J. CANTY, E. E. GRAY and J. C. M. CLOW, for appellants.

JAMES C. McSHANE, for appellee.

MR. JUSTICE KAVANAGH delivered the opinion of the court.

On January 29, 1906, Thomas Walsh was injured while employed by appellants as a workman—appellants as contractors being at the same time engaged in excavating a large tunnel under Lawrence avenue in the city of Chicago. This tunnel was to be about 20 feet in diameter, and the manner of its excavating was something as follows: A hollow steel cylinder, called a shield, fourteen feet long and of about the same diameter as the proposed tunnel, was divided into nine holes or pockets by means of two horizontal and two vertical iron partitions running through it. In these pockets the men worked, the partitions serving as platforms and walls. The back of the shield was

McShane v. Hanreddy, 167 Ill. App. 374.

open, but before the night in question, so long as a man stood on the platform, he was covered by the shield. The front edge or cutting edge of the shield was beveled or sharpened, and this front edge, by means of hydraulic "jacks," was being constantly pressed forward into the earth ahead. As the shield was being thus driven through the ground the dirt rolled down into the pockets, and the men stood in the pockets shoveling it back. The work was being carried on continuously by three shifts of laborers, who worked eight hours each in turn. Usually each shift was able to make about five feet of progress.

Walsh went to work that night about eleven o'clock, and had worked a little over an hour when a round ball of clay, or hard sand, fell out of the roof just ahead of the machine, and rolled into the shield upon Walsh severely injuring him.

Without entering into a discussion of the evidence it seems clear from the entire record, that the reason for the accident lay in the fact that during the day these propelling hydraulic "jacks" had become out of order, so that it was impossible to keep the cutting edge of the cylinder up into the dirt. When the plaintiff begun work there was a considerable uncovered space between the dirt wall in front and the top of the cylinder. The front wall slanted so that the space was greatest at the roof and narrowest at the bottom. During the hour that Walsh worked, this space at the bottom and in the middle was increased by reason of the men's working with picks, so that at the time of the accident there was an uncovered, unprotected roof in front of the cylinder, which extended forward from four to six feet. It was from this portion of the unprotected roof that the mass of clay fell, first striking the slanting side of the wall, and then precipitating itself upon Walsh.

Appellants contend, first, that the evidence shows no neglect upon their part. We think the evidence clear-

ly demonstrates the need of some kind of protection for the workmen from falling material. Of necessity on this night the workmen must reach through the space in front to do their picking. Walsh testifies, indeed, that he had one foot on the bank in front when the mass of clay fell. It was clearly a question for the jury to say whether or not, under all the circumstances, leaving the workmen uncovered and unprotected, as they were, in view of all the surroundings, constituted negligence. Ross v. Shanley, 185 Ill. 390; Barnett v. Schlapka, 208 Ill. 426. But it is urged that if danger existed Walsh, himself, was in as good position to know of it as any one else, so that he assumed the risk of the danger. At the time of his hiring the servant agrees to assume the risk of all dangers ordinarily incident to the employment, and of all dangers which he afterwards knows or might have learned by the exercise of ordinary care on his own part. It has been repeatedly held that mere notice of a defect is not sufficient to charge him with an assumed risk; it must be knowledge of danger. The question upon the facts above presented was squarely one for a jury to decide, and their decision under the law of the state is final. But further than this, before beginning work that night Walsh noticed the space in question, and it is uncontradicted that he called the attention of his foreman, Burke, to it. "Burke and I had a talk," he says, "Burke looked at the heading and told me to go ahead and take another foot down. I asked him if it was safe to do that and he said, 'Yes, go ahead and take it out.'"

In Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill. 573, the Supreme Court says: "When an act is performed by a servant in obedience to a command from one having authority to give it, and the performance of the act is attendant with a degree of danger, yet in such case it is not requisite that such servant shall balance the degree of danger and decide with ab-

solute certainty whether he must do the act or refrain from it; and his knowledge of attendant danger will not defeat his right of recovery if in obeying the command he acted with that degree of prudence that an ordinary man would have done under the circumstances. He was not on the same footing with his master. * * * Kelly had superior opportunities of knowing the condition of the bank, and had superior experience, and the servant had the right to assume that the foreman would not misrepresent the probability of danger and order him into a place dangerous to life or limb." To the same effect is Chenoweth v. Burr, 242 Ill. 312, and Kennedy v. Swift, 234 Ill. 606, and many other cases.

We are also of the opinion, that the instruction number five complained of comes fairly within the doctrine laid down by the Supreme Court in Anderson Pressed Brick Co. v. Sobkowiak, *supra,* and that the objections to it are not well taken.

Concerning the damages proved, we are of the opinion that they are excessive. In this case in indicating the amount of such excess it is difficult to fix upon a line beyond which we would not be infringing upon the province of the jury, but we feel that the verdict is clearly $3,000 in excess of what it should have been. If appellee shall remit $3,000 from the judgment it will be affirmed, otherwise reversed. We find no error in the record.

*Affirmed on remittitur.*

*Remittitur* filed and judgment affirmed February 14, 1912.