The Elgin, Joliet and Eastern Railway Company

*v.*

John R. Herath, Admr.

*Opinion filed October 23, 1907—Rehearing denied Dec. 5, 1907.*

1. Negligence—*what elements are essential to a recovery.* Before a recovery can be had against a railroad company for the accidental death of an employee, whether he was a foreman or a common laborer, it is essential that it be proved that the defendant was guilty of negligence and that the deceased was in the exercise of due care for his safety; and if there is an entire absence of evidence tending to prove either one of such elements the defendant is entitled to an instruction directing a verdict in its favor.

2. Trial—*when a verdict should be directed for the defendant.* In an action for the accidental killing of a car repairer in the defendant's employ, the defendant is entitled to an instruction directing a verdict in its favor, even though there is sufficient evidence to justify submitting the question of the defendant's negligence to the jury, if there is no proof whatever that the deceased was in the exercise of due care for his safety, the evidence showing that although he was in charge of the repair gang and had knowledge of the danger of his working on the particular job with no signal out, he took no precautions for the safety of himself or his men, although one of the men suggested that a protecting signal be put out.

Appeal from the Appellate Court for the Second District;—heard on that court on appeal from the Circuit Court of Will county; the Hon. Albert O. Marshall, Judge, presiding.

O'Donnell & Donovan, (Knapp, Haynie & Campbell, of counsel,) for appellant:

It will not be presumed that the jury intended to find any undisputed fact contrary to all the evidence. *Railway Co.* v. *Conway,* 76 Ill. App. 624.

A car repairer who goes to work under a car on a track without displaying signals and relying upon another employee or his own vigilance to protect him from moving cars is guilty of such negligence that he cannot recover. *Rail-*

*road Co.* v. *Winslow,* 56 Ill. App. 462; *Railroad Co.* v. *Pool,* 160 U. S. 438.

A servant assumes all the risks incident to the work in which he is engaged which are either known to him or open to the observation, equally, either of himself or his master. *Christiansen* v. *Tank Works,* 223 Ill. 142; *Swift & Co.* v. *Fue,* 66 Ill. App. 657; *Coal Co.* v. *Haenni,* 146 Ill. 614; *Railway Co.* v. *Conway,* 76 Ill. App. 622; *Railroad Co.* v. *Murphy,* 53 Ill. 336; *Potter* v. *Railroad Co.* 136 id. 77; *Railroad Co.* v. *Pool,* 160 U. S. 438; *Railroad Co.* v. *Heerey,* 203 Ill. 497.

Where an employee fails to use an appliance provided for his use to protect his life and limb in the discharge of his duties, and is injured by reason of the want of such precaution, he is guilty of negligence as a matter of law. *Munn* v. *Wolff Manf. Co.* 94 Ill. App. 122; *Kinsley* v. *Pratt,* 148 N. Y. 372; *Coal Co.* v. *Barringer,* 218 Ill. 627; *Webster Manf. Co.* v. *Nesbitt,* 205 id. 275; *Gunning* v. *LaPointe,* 212 id. 279.

If a servant acquires knowledge of the danger from any source, so as to be as fully aware of the danger as if instructed by the master, he will be held to have assumed the peril incident to the employment. *Doolittle* v. *Pfaff,* 92 Ill. App. 301; *Jones* v. *Roberts,* 57 id. 56.

Where an employee knows of the danger and without expressly assenting to the conditions continues without objection, he will be presumed, as a matter of law, to have assumed the risk. *Railroad Co.* v. *Swisher,* 61 Ill. App. 611.

Due care on the part of the deceased must be shown by affirmative evidence, and where the evidence is silent on that subject or affirmatively shows complete knowledge and assumption of the risk a recovery cannot be had. *Wilson* v. *Railroad Co.* 210 Ill. 603; *Howe* v. *Medaris,* 183 id. 294; *Railway Co.* v. *Donahoe,* 75 id. 106.

In *Cypher* v. *Railroad Co.* 149 Pa. St. 359, plaintiff went to work under a car knowing that engines were liable to

run in on that track and knowing that no flag was set for his protection, and it was held plaintiff was guilty of contributory negligence which would bar a recovery, and a non-suit was ordered.

Barr, Barr & Barr, for appellee:

In cases of this kind the question whether a person was guilty of contributory negligence is generally one of fact for the jury, and only becomes a question of law when the evidence so clearly fails to establish due care that all reasonable minds would reach the conclusion that there was such contributory negligence. *Railway Co. v. Steckman*, 224 Ill. 501.

If the evidence on the question is in conflict, or if there is evidence fairly tending to support the verdict, or if reasonable minds might arrive at different conclusions, it is a question of fact and must be submitted to the jury, (*Werk v. Steel Co.* 154 Ill. 427,) and its verdict, and the judgment of the trial court affirmed by the Appellate Court, are final and conclusive. *Railroad Co. v. Crose,* 214 Ill. 602.

The question of assumed risk does not arise where a servant performs dangerous work in obedience to the master's command, the question in such case being one of contributory negligence, depending upon whether the danger was so great that a person of ordinary·prudence would not have incurred it. *Boiler Co. v. Parks,* 222 Ill. 355.

Where the servant is ordered by the master to work in a place known by both of them to be in a degree dangerous, the master will be liable for any resulting injury to the servant, unless the danger was so great that an ordinarily prudent person would have refused to obey the order. *Car Co. v. Herath,* 207 Ill. 576.

To have known the condition without knowing the danger therefrom arising will not operate to make it, of necessity, an assumed risk. *Railroad Co. v. Dudgeon,* 83 Ill. App. 528; 184 Ill. 477.

The rule that the servant assumes the ordinary risks in-cident to the business presupposes that his master has per-formed the duties of caution, care and vigilance which the law casts upon him. It is those risks, alone, which cannot be obviated by the adoption of reasonable measures of pre-caution by the master that the servant assumes. *Stone Co.* v. *Muscial,* 196 Ill. 382; *LaSalle* v. *Kostka,* 190 id. 130.

The servant has the right to rely on the master's doing his duty of furnishing him a safe place to work. *Lumber Co.* v. *Ligas,* 172 Ill. 315.

It is improper to permit a party to attempt, in the first instance, to establish any branch of his case by the cross-examination of his adversary's witnesses. When a witness is called by one party, the other has only the right to cross-examine upon the facts to which he testified in chief. *Stafford* v. *Fargo,* 35 Ill. 481; *Railway Co.* v. *Blatchford,* 81 Ill. App. 609; *Mahoney* v. *People,* 138 Ill. 311; *Rigdon* v. *Conley,* 141 id. 565; *McKone* v. *Williams,* 37 Ill. App. 591; *Railroad Co.* v. *Burke,* 112 id. 415; *Hanks* v. *Rhoades,* 128 Ill. 404.

Mr. Justice Cartwright delivered the opinion of the court:

This is an action on the case brought by appellee, as administrator of the estate of Thomas H. Menary, deceased, in the circuit court of Will county, to recover from appel-lant damages resulting to the widow of said Menary from his death while in the employ of appellant as a car repairer in its yards at East Joliet. The original declaration con-sisted of one count, to which the plaintiff, by leave of court, added two other counts, but they all made the same charges. They alleged that Menary was in the employ of the defend-ant in the work of repairing cars; that on July 21, 1904, he was repairing a car on a track in the defendant's yards which in one count was called the "wire mill track" and in the other counts a "switch track;" that he was in the ex-

ercise of due care for his own safety, and that defendant negligently pushed other cars upon the track against the car on which he was at work and injured him so that he died. The plea was the general issue and there was a verdict for $8000. On hearing a motion for a new trial the court required the plaintiff to remit $1000 and entered judgment for $7000. The Appellate Court for the Second District affirmed the judgment. A further appeal was prosecuted to this court, and the assignment of error presented for our consideration is, that the circuit court erred in denying the defendant's motion, at the close of the evidence, for a peremptory instruction directing a verdict of not guilty.

The following facts were proved and not controverted: On July 21, 1904, Thomas H. Menary had been in the employ of defendant as a car repairer in its yards in East Joliet for six months. There were about two hundred men employed in the yards and they were divided into gangs of four. Charles H. Emerson was the general foreman of the yards. Menary, Louis Johnson and two Swedes who were unable to speak English constituted one of these gangs. Menary was supplied by Emerson with a book in which to keep a record of the work done by that gang and the time taken in each piece of work. Emerson told Menary where to work and what to do, and Menary directed the other men, who were required to work as he told them. Menary had no power to hire or discharge men but the others were required to obey him, and in case of disobedience by any of them he would report to Emerson. Defendant had in its yards repair tracks for repairing cars in bad order. There were two such tracks for heavy repairs, which were called "sill tracks," and there was another track for light repairs. Cars were not put in on the sill tracks except at night. On either of the repair tracks the rule was, never to come in with a car and set it so as to strike another. When a car was brought in in bad order the men were required to "spot

230—8

the car," as it was called, so as not to run against another car. The track where the accident occurred was known as the "wire mill track" and was about three blocks from the repair tracks, and the above rules did not apply to it. It was used for the storage of cars, and cars that were in bad order were put in there at any time in the usual way,— sometimes every day and at other times once in two or three days. On the morning of the accident, about eight o'clock, Menary, with his gang, was working on one of the regular repair tracks when Emerson came to them and told them to come over with him to the wire mill track,—that he had something there for them to do. Emerson went with them over to the track and pointed out a box-car and told Menary to strip that car down and load it on a flat-car. Menary told the other men of his gang to go ahead, and told them what to do. Emerson left and went back to the repair tracks, three blocks away. There was a flat-car standing about four feet from the box-car, toward the switch connection with the other tracks, and no sign or signal was put up to indicate that the men were about the box-car and no provision was made for keeping any watch for engines or other cars. The four men went to work dismantling the car and loading it on the flat-car. One of the Swedes was with Menary at the end next the flat-car and the other one was with Johnson at the other end of the car. They had the coupler down and the bolster off and had taken out some things underneath, and Johnson, with his assistant, was at the other end of the car taking out the brake-beam. The end of the car where Menary was at work had been jacked up, and Johnson came around the car and asked Menary if he could have a jack. Menary said "all right," and Johnson stooped over, and when he looked up saw an engine backing up toward the flat-car and pushing four coal cars and moving slowly. Johnson told Menary to look out, but the first coal car struck the flat-car and pushed it against the box-car, causing Menary's death.

There were two essential elements of the cause of action alleged in the declaration, both of which must be proved to entitle plaintiff to a verdict: First, that Menary was in the exercise of due care for his own safety; and second, that the defendant was guilty of the negligence charged. If there was an entire lack of evidence fairly tending to prove one of these essentials the defendant was entitled to have the instruction given. In considering the question the court was not authorized to weigh conflicting evidence and determine on which side the preponderance lay, and there was evidence fairly tending to prove the charge of negligence against the defendant. There was evidence on the part of the plaintiff that there was no signal, by bell, whistle or otherwise, of the approach of the engine with the cars, and there was no one on the first car which was being pushed down toward where the men were working. There is no statutory requirement that a bell shall be rung or whistle sounded in doing switching work in railroad yards unless in approaching a street or highway, and there was no evidence that there was any rule or custom in these yards to give warnings or signals of that kind. Neither was there any evidence of any regular custom to have a brakeman ride on the cars, the evidence being that sometimes there was a brakeman on the first car and sometimes not. When the coal cars were set in on this occasion the switchman was walking on the right-hand side of the cars and they were moving about as fast as a man would ordinarily walk. The switchman testified that there was not anything to indicate that men were working on the track and that he saw nothing to indicate their presence. There was also evidence for defendant that if any repairs were made on that track a flag was put up as a warning, and there was a red flag lying on a pile of ties by the side of the track, between the flat-car and the switch. On the other hand, there was evidence that the end of the box-car where Menary was at work was jacked up to a height of four feet, and was high enough so that the

men who were putting in the coal cars ought to have seen it. Although the wire mill track was not a repair track, light repairs were occasionally made upon cars standing on it, so that there was a possibility of men being at work on it. The evidence on the part of the plaintiff would have been sufficient to require submission to the jury of the question whether, under all the circumstances, the manner in which the cars were put upon the track and pushed against the flat-car was negligent, if there had also been evidence fairly tending to prove that Menary was in the exercise of reasonable care and caution for his own safety.

On the question whether Menary was in the exercise of the care and caution required of him there was no contradictory evidence. The only one who gave any testimony relating to that subject was Louis Johnson, who was working with Menary and who testified as a witness on behalf of the plaintiff. He testified that Emerson took them to the place and gave them directions what to do and went away, and that before they went to work the witness said to Menary, "Tom, don't you suppose we ought to have a flag?" and Menary answered, "No," and said they could look out for themselves. The account of the same conversation which the witness said he gave to another person, and which was not materially different, was, that he said, "Tom, don't you suppose we ought to put out some kind of a sign?" and that Menary said he did not think it was necessary; that they had only that one car and they could look out for themselves. They were taken to the car by Emerson about eight o'clock and the accident occurred about ten o'clock. Nothing whatever was done by Menary either to give notice that he and the other men were working at the car or to keep any watch or look-out for cars or engines. The flag was lying on the pile of ties about two hundred and fifty feet distant from the box-car, and the witness said he did not know it was there until after the accident. Menary's statements that they could look out for

themselves showed that he knew the necessity of adopting some sort of precaution, while, as a matter of fact, he did nothing.

There seems to have been much strife at the trial, and it is continued in the argument, as to whether Menary should be called a foreman or not. That question is not of the slightest importance in this case, since there is no question relating to the authority of a foreman or superior servant, or any liability of defendant arising out of the exercise of such authority or any act of Menary in that capacity. It was proved, and not denied, that he had the book and controlled the movements of the three men who were with him, and the question whether the defendant would have been liable for some act or omission by him on account of his position is not involved. There is no claim that Menary relied, or had any right to rely, upon Emerson, as general foreman of the yards, either to put up a flag or signal or do anything else to protect him, and if Menary was not a foreman his duty to use reasonable care and caution for his own safety would not be affected, in any degree, by that fact. Due care and caution on his part was indispensable to the right of plaintiff to recover against defendant for the injury, even if other servants of defendant were guilty of negligence. There was no dispute whatever in the evidence of the fact that Menary took no precaution whatever for his own safety, but went to work at the car without giving any attention whatever to the surroundings or the dangers of his situation. There was an utter lack of evidence tending to prove the averment that he was in the exercise of due care and caution, but the evidence affirmatively proved the want of any care, and the court erred in refusing to give the instruction.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*