# Maggie Mikesell, Administratrix, Appellee, v. Chicago & Alton Railroad Company, Appellant.

1. MASTER AND SERVANT—*who not fellow-servants.   Held,* that a foreman in charge of a switching crew was not a fellow-servant of a member of another switching crew.

2. MASTER AND SERVANT—*extent of care to be exercised by former.* The master is not required to take any better care of a servant than such servant sees fit to take care of himself.

3. MASTER AND SERVANT—*what order of foreman not negligent per se. Held,* in this case, that an order of a foreman to switch or shunt a car, was not negligent *per se.*

4. NEGLIGENCE—*how proximate cause determined.* The question of proximate cause is ordinarily one of fact.   When, however, the evidence is undisputed and the minds of all reasonable men must arrive at the same conclusion therefrom, it becomes a question of law for the court.

Action in case for death caused by alleged wrongful act.   Appeal from the Circuit Court of Sangamon county; the Hon. O. P. THOMPSON, Judge, presiding.   Heard in this court at the May term, 1910.   Reversed. Opinion filed November 1, 1911.   Rehearing denied, opinion modified. *Certiorari* denied by Supreme Court (making opinion final).

PATTON & PATTON, for appellant; SILAS H. STRAWN, of counsel.

T. J. CONDON and ALBERT SALZENSTEIN, for appellee.

MR. PRESIDING JUSTICE PHILBRICK delivered the opinion of the court.

This is an action by Maggie Mikesell, administratrix, to recover for the death of her husband, alleged to have been caused by negligence of appellant. Trial below resulted in a verdict and judgment for appellee for $5,000 to reverse which this appeal is prosecuted.

The cause was tried upon two counts of the declaration, designated as the first and third additional counts; these counts charge the defendant with using and operating a railroad in Sangamon county, with certain main tracks and switch tracks, the switch tracks being used for storing and transferring and switching cars from one track to another; that the deceased was a switchman in appellant's employ; that his duty required him to aid in handling, switching, and moving cars and to go between cars to adjust the couplings, while the said cars were being switched and handled by the engines, and that the deceased, in pursuance of his duty went between two cars, one of which cars was attached to an engine, and that while so between said cars exercising due care and caution for his own safety, the defendant by one Lantry, the then yard master of appellant and who is alleged to be a vice principal of appellant and not a fellow servant of deceased, and who knew or ought to have known deceased was then between the said cars, negligently gave an order which directed certain other employes of defendant to switch or kick a car on to the track where deceased was then between the said cars and toward the engine so attached to one of said cars, without giving deceased any notice or warning thereof, and that the said car so ordered by Lantry to be switched or kicked on to said track came in contact with and struck the said engine so attached

to one of the cars which deceased was then between with such force that the deceased was caught between the two cars and so crushed and injured that he died.

The principal causes urged by appellant for reversal of the judgment are, that the act of Lantry in ordering and directing the said car to be so switched and kicked upon the said track, was not the proximate cause of the injury to appellee's intestate, but that the injury was caused by reason of negligence of fellow servants of the deceased while handling the car; that the order given by appellant through Lantry was not of itself a negligent order but that the manner of the execution of the order was left wholly with fellow servants of deceased and that it was the negligent execution of the order by these fellow servants that caused the injury; and that deceased was not in the exercise of due care, etc.

Appellant's counsel devotes considerable of his argument to the fact that the declaration is insufficient in and that it does not contain a sufficient allegation of due care on the part of the deceased.

A demurrer was interposed to this declaration and overruled by the trial court. Appellant did not abide by its demurrer but pleaded to these counts of the declaration.

The declaration contains averments of due care on the part of the deceased, and appellant, having failed to stand by its demurrer to the declaration, is not now in position to raise the question of the sufficiency of the averments of due care.

The facts, as disclosed by this record, are that appellant was the owner of a line of railroad, as alleged in the declaration; that the yards at Ridgely consist of numerous tracks located on either side of the main tracks; upon that side of the main tracks where this injury occurred, were located seven switch or side tracks, numbered consecutively from one to seven. The

business of appellant in getting the cars located upon these various switches into the proper trains for forwarding to their proper destinations required numerous switching crews and switching engines. The entire yards were in charge of Lantry, as yard master, and he had control thereof. Under him were five switching crews, each having an engine with which to work, and each crew consisted of an engineer and four switchmen, one of the switchmen being known as the switch "foreman," whose duty it was to see that the orders given by Lantry were executed. This foreman had charge of and directed the work of the crew. These various switching crews had no particular place within the yards, within which they worked, but all worked on the various tracks wherever their work required them to go. The cars were brought into the yards by the various trains running upon the main line, and were placed on the various side tracks. In these trains were cars which it was necessary to send to various destinations. Each morning the yard master was furnished with a list of all cars and their destinations; it was his duty to give to each foreman of the various switching crews the location and the destinations of the various cars which they were respectively to handle; it then became the duty of these crews to separate those cars and place them on the proper tracks for forwarding. The method and manner of executing the orders given by the yard master was left to the judgment and discretion of the foreman of the switching crews. As to what tracks they might temporarily switch any cars on, was left to his discretion in the performance of these duties. After the work of separating and collecting the various cars and placing them upon their proper tracks for forwarding to their destination, it was then his duty to inform the yard master that this work had been done.

Upon the day of the death of the deceased, the fore-

man of the switching crew with which deceased was working, was directed by the yard master to take certain cars, which were known and designated as bad order cars, then upon switch track No. 7, to Springfield to the shops. In performing this order the switching crew with which deceased was working proceeded to track No. 7, where the cars designated and known as bad order cars were with other cars. In separating the bad order cars from the others and getting them together, this switching crew placed a portion of the bad order cars upon track No. 6 and while these cars were on track No. 6 the deceased went between two of them for the purpose of chaining or fastening them together so that they could then be taken to Springfield, as directed by Lantry. The engine with which the crew deceased was working at the time was attached to one of the bad order cars on track No. 6. After the giving of the order to take these bad order cars to Springfield, Lantry received what is known as a "rush order," which directed him to send to Springfield a certain car known as a Mexicana car, and having already given the order that the bad order cars be taken to Springfield, he directed the foreman of another switching crew, then at work in these yards, to take this Mexicana car from the track on which it was then standing and switch or kick it in on the track in front of the engine working with the bad order cars so that the crew working with the bad order cars might take it with them to Springfield. This crew with their engine picked up the Mexicana car and under the direction of the switch foreman it was kicked or shunted in on track No. 6. While it was being so switched the foreman of this switching crew directed one of the crew to get upon the car and ride it down to the engine then on track No. 6 and attached to one of the bad order cars. The foreman of this switching crew was a vice principal, and was not a fellow servant of

deceased.    Chicago Terminal R. R. Co. v. Reddick,
230 Ill. 105.    In placing this Mexicana car upon track
No. 6 he should have directed it to be run with such
speed and momentum that the switchman on top of
the car could have stopped it before it came in con-
tact with the engine, but instead of so doing he caused
or permitted it to be shunted or kicked upon this track
at such speed that the switchman on top of the car
was unable to, and did not succeed in stopping it, be-
fore it crashed into the engine attached to the bad
order cars and the consequence was that the Mexicana
car hit this engine with such force, that it forced the
two bad order cars together, caught the deceased be-
tween the cars and crushed him so that he died.

From the undisputed facts shown by the evidence
it is impossible to arrive at any other conclusion than
that the deceased by going between the bad order cars
without protecting himself in any way and without
giving to the other crews at work in these yards any
notice that he was in a place of danger was a failure to
exercise due care for his own safety.

The contention of appellant that the injury was
caused by reason of the negligence of fellow servants
of the deceased and for that reason there can be no
recovery, is not tenable.    While the record discloses
that the two switching crews were working in the same
line of employment, each crew was under the separate
charge of a switch foreman, who directed the move-
ments of the crew and the work of the engine, and it
was under his direction and management that the re-
spective crews did their work, and under the ruling in
Chicago Terminal Railroad Company v. Reddick,
*supra,* the foreman in charge of the switching crew and
under whose direction work was done was not a fel-
low servant of the other members of the crew.

The evidence shows that the various side-tracks
were liable to be used by any of the five switching

crews at any time when in their judgment it became necessary so to do in the moving and placing of the cars on these tracks; that neither deceased nor those working with him gave or placed any signal to indicate to the other crews that deceased was engaged in his work between the bad order cars, and also that the other crews had no reason to suspect or know that he was so engaged, and having taken no precaution or care to protect himself while there the master was not required to take any better care of him than he saw fit to take of himself.     Jones and Adams Coal Company v. George, 227 Ill. 64; Missouri Furnace Co. v. Abend, 107 Ill. 44; E. J. & E. R. R. Co. v. Herath, 230 Ill. 109.

The method and manner of executing the order given by Lantry in this case was under the control of the switch foreman, but the charge of negligence in the declaration is that Lantry was negligent in giving the order to switch or shunt the Mexicana car in on this track at that time.     So far as this record discloses, the order was not negligent *per se*.     It is shown that Lantry had no means of knowing that the giving of the order or its proper execution would place any employee in danger and he had the right to assume that his orders would be carried out in a skillful, careful and proper manner.

It might have been safely executed if done in a proper manner, and the manner of executing the order having been left to the judgment and discretion of the switch foreman, if there was any negligence it was the negligence of the switch foreman in the execution of the order, in handling, shunting, or switching the Mexicana car upon the track and there is no complaint or charge in the declaration that he was negligent in the execution of the order given by Lantry.

The only charge of negligence in the declaration being the giving of a negligent order by Lantry at a

time when he knew, or by the exercise of due care should have known, that Mikesell was or might be under or between the bad order cars, it was necessary before a recovery could be had that plaintiff prove this specific charge of negligence. The order cannot be held to be negligent *per se* and in order to recover on this declaration it was necessary to show that the giving of the order was the proximate cause of the injury and also that Lantry knew or by the exercise of due caution might have known that Mikesell was between the bad order cars. The evidence not only fails to show this, but does show that Lantry did not know and had no means of knowing and by the exercise of ordinary care, could not have known where the bad order cars then were or whether Mikesell was between them or not. Where a specific charge of negligence is made and that it was the negligence of a certain vice principal, proof of negligence of another vice principal or of other servants will not sustain the charge. Chicago & Eastern Illinois R. R. Co. v. Driscoll, 176 Ill. 330; Hazen v. Schleuter, 236 Ill. 467-72.

While the question of proximate cause is ordinarily a question of fact for the jury, when the evidence is undisputed and the minds of all reasonable men must arrive at the same conclusion therefrom, it becomes a question of law for the court.

The judgment is so clearly against the weight of the evidence that it must be reversed. The Clerk will enter in the judgment of this court the finding of facts that the deceased was not in the exercise of due care for his own safety and that the giving of the order by Lantry was neither negligence nor the proximate cause of the injury.

The judgment is reversed.

*Reversed.*