## Thomas J. Meadors, Plaintiff in Error, v. Illinois Central Railroad Company, Defendant in Error.

1. MASTER AND SERVANT, § 485*—*when failure of conductor to observe rule of railroad company contributory negligence.* In an action against a railroad company for personal injuries received by a conductor in a collision with a northbound train while he was in charge of an extra southbound train, where it was alleged that defendant was negligent in failing to warn plaintiff of the approach of the northbound train, *held* that a direction of a verdict for defendant was not error, it appearing that there was a rule of the company giving the northbound train the right of way, and that the plaintiff violated another rule of the company requiring conductors on southbound trains to register at stations and seek information.

2. MASTER AND SERVANT, § 485*—*when failure of employee to observe rules constitutes contributory negligence.* Where a railroad employee has violated a rule of the railroad company designed for the protection of himself and the patrons of the company, which if he had observed he would not have been injured, such violation of itself is such contributory negligence as will preclude recovery.

PHILBRICK, J., took no part in the decision of this case.

Error to the Circuit Court of DeWitt county; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed May 5, 1914.

HERRICK & HERRICK, for plaintiff in error.

JOHN G. DRENNAN and LEMON & LEMON, for defendant in error.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

This is an action brought by Thomas J. Meadors, the plaintiff in error, against the Illinois Central Railroad Company, defendant in error, to recover damages for personal injuries received by plaintiff, while an employee of defendant, in a railroad collision aver-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

red to have been occasioned by the negligence of the defendant. At the first trial in the Circuit Court a jury returned a verdict for the defendant, a motion for a new trial was allowed, and on the second trial, after the plaintiff had introduced his evidence, the defendant requested a peremptory instruction which was refused; at the close of the defendant's evidence it again requested a peremptory instruction which was given. The ruling of the court in thus withdrawing the case from the jury presents the ultimate question for determination.

The declaration contains five counts. The first count avers that the plaintiff at the time of the injury was in the employ of the defendant as a railroad conductor in charge of train "extra 913" running from Decatur to Centralia; that it was the duty of defendant to warn plaintiff of the approach of other trains running towards the train in charge of plaintiff, and that the defendant negligently failed to warn plaintiff of the approach of "extra 593" going north, so that the train of plaintiff would take a siding at Oconee and there permit said extra 593 to pass said extra 913 in safety, and that defendant negligently permitted extra 913 in charge of plaintiff to depart southward from Oconee, and by reason thereof said trains collided, etc.

The second and third counts aver negligence of the defendant in that the operator at Pana failed to deliver an order of the train dispatcher to hold extra 913 at Oconee. The fourth avers negligence in failing to signal extra 913 to stop at Pana, and the fifth avers that the defendant retained in its employ an incompetent switch tower operator at Pana and that by reason of his negligence the collision occurred. Each count avers that plaintiff was in the exercise of due care for his own safety.

The undisputed evidence is that the plaintiff was a conductor, who had been in the employment of de-

fendant about fifteen years, running trains between Clinton and Centralia. On March 2, 1910, plaintiff's run ended at Decatur, where he stayed all night. The next morning he received an order to run extra 913, consisting of an engine and caboose, from Decatur to Ramsay, which is eighteen miles south of Pana.

Plaintiff testified that he was familiar with the rules and time tables of the Company. Rule B 2 is: "All northbound trains are superior to trains of the same class in the opposite direction." Rule B 5 is: "Train registers are kept at Clinton, Marva, Decatur and Pana. See rule 613. Rule 613 is: "At points where train registers are kept, conductor must enter in the register all information required by its form and before proceeding must know whether all the trains due, which are superior or of the same class, have arrived or left." At Pana the defendant's railroad is crossed by the C. & E. I., the B. & O. and the Big Four; the Big Four crossing is between two hundred and three hundred feet south of the B. & O. crossing, and is the most southerly of these crossings. A telegraph office and a tower for managing the interlocking system is at the Big Four intersection. The machinery for the tower plant is in the first story of this building, the telegraph office in which was the train register is in the second story and the tower man is in the third story. The interlocking plant has two signals which are controlled by the tower man; the telegraph operator has nothing to do with the signals. When plaintiff's train arrived at the B. & O. crossing, the home signal was set against train 913. The train stopped and plaintiff got off the caboose and had started towards the crossing and the telegraph office, when the engineer whistled and the plaintiff says that he looked at the signal and seeing it was clear got back on the train without going to the office to register and the train proceeded on south past Oconee and two miles south of there a collision occurred with an extra

going north. Plaintiff was asked this question, "Didn't you know it was your duty under the rules to go up in the second story and personally register?" He answered, "Yes, sir." He was also asked, "Didn't you know, when you went up there to register, that if there were any orders for you, it was the duty of the operator to give them to you? Didn't you know that?" His answer was "Yes, Sir." The train passed the registering station at from ten to twenty miles an hour. The evidence also shows that there was a custom to allow superior trains, those going north, if the conductor had special permission from the train dispatcher, to register by a slip, that is to throw a slip of paper giving the necessary information, as the caboose went by the office, to the operator who copied it into the register, but that there was no authority for any conductor to so register without the direction of the train dispatcher. Plaintiff undertook to show an habitual violation of the rule to register, and at his request the register book used for three months prior to the accident was produced and used in evidence and it did show that on several occasions while going north he had registered by a slip, but he only attempted to testify to one occasion during that time that he went south without personally registering, and he was not sure but that he was "deadheading" south at that time. The register book and the evidence of the plaintiff show conclusively that trains going south were always registered by the conductors personally. These registering stations are the stations to which orders are telegraphed and where, when the conductor goes to register, he gets his orders.

It is also undisputed that there was, when plaintiff's train passed Pana, an order there in the registering station, for the conductor of extra 913 south to meet and pass extra 593 north at Oconee. There is a conflict in the evidence as to whether the order board was or not set against the train, but that is not ma-

terial. The rules in evidence and the custom as shown by plaintiff required the conductors of all southbound trains to personally register in the telegraph office, where they would get orders for their subsequent procedure. The conductors are in charge of the trains and the engineers are not required to register and are under the orders of the conductors; the engineer by whistling could not relieve the plaintiff of his duty of registering in the telegraph office and getting the order that was there for him.

Where in a personal injury case the plaintiff has violated a rule of the defendant designed for the protection of the employee and the patrons of defendant which, if the plaintiff had observed, he would not have been injured, this of itself is such contributory negligence as will preclude a recovery. *Elgin, J. & E. Ry. Co. v. Herath*, 230 Ill. 109; *Abend v. Terre Haute & I. R. Co.*, 111 Ill. 202; *Illinois Cent. R. Co. v. Winslow*, 56 Ill. App. 462. If the plaintiff at the time of the accident had been running a regular train south, his failure to observe the rules would have been such want of ordinary care as would defeat a recovery, and his failure to observe such rules while in charge of an extra train was much more culpable.

No judgment could be sustained on the evidence of plaintiff in conection with the rule of the Company with which he was familiar, because of his contributory negligence, and there was no error in the court instructing a verdict for the defendant. The judgment is affirmed.

*Affirmed.*

Mr. Justice Philbrick took no part in the decision of this case.