## NEILS C. JENSEN

*vs.*

## THOMAS A. L. T. KYER.

Cumberland.  Opinion December 29, 1905.

*Master and Servant. Servant's Duty. Assumption of Risk. Specific Orders. Assurance of Safety. Master's Negligence. Servant's Contributory Negligence.*

Master and servant do not stand upon the same footing. The servant's duty is obedience. He has a right within reasonable limits, to rely upon his master's knowledge, skill and ability and is not bound to set his judgment against the judgment of his superior. Specific orders and assurances of safety, coming from such a source, have a natural tendency to throw him off his guard and lull him into a feeling of security.

In determining the question of contributory negligence of a servant, who is injured while acting in obedience to the specific orders of the master present, and under his assurance of safety, such order and assurance constitute a part of the attendant circumstances to be considered.

Such order and assurance are immaterial, however, unless they are the operating influence which induces the servant to do the act that is the immediate cause of the injury.

To constitute an order it is not necessary that the language used should be of a formally imperative character.

If the danger is so patent and serious that no prudent man would incur it, the servant cannot plead the master's order or assurance of safety as a justification for placing himself in a position of such obvious peril.

Negligence on the part of the master is not one of the ordinary risks which the servant assumes as a part of his contract of employment.

Upon the question of voluntary assumption of risk by the servant, he is chargeable with the full consequences of what he ought to have known in the exercise of ordinary care and prudence, but the specific command of the master and his assurance of safety are to be weighed as a part of the attendant circumstances.

On exceptions by plaintiff.　Sustained.

Action on the case to recover damages for personal injuries suffered by the plaintiff and caused by the alleged negligence of the defendant. Plea, the general issue. After the completion of the plaintiff's evidence at the trial, and upon the defendant's motion, the presiding Justice ordered a nonsuit, and thereupon the plaintiff excepted.

The case is stated in the opinion.

*Wilbur C. Whelden and Wilford G. Chapman,* for plaintiff.

*Symonds, Snow, Cook & Hutchinson,* for defendant.

SITTING : EMERY, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

POWERS, J. Exceptions to the ruling of the presiding justice ordering a nonsuit at the close of the evidence for the plaintiff.

The plaintiff was employed by the defendant to drive a sprinkling cart. He was totally blind in one eye ; and the sight of the other was "very poor," so that he could not see to read without using a glass. This the defendant knew. Plaintiff had operated a sprinkler the month before, but was never upon the defendant's sprinkler until the day of the injury. He had driven through the big doors of other barns with different loads, but had never been in the defendant's barn but once or twice and then only on foot. The injury was received about five o'clock of a July afternoon. The defendant was sitting on the seat of the sprinkler with the plaintiff who testifies : "When we came along near the yard I asked him where he wanted me to put that sprinkler ; and he says 'In the barn sure.' So I went into the yard and when I came near the barn door I stopped the sprinkler, and then he raised up in the seat, and I thought I was going off too,

and he says : ' Hold on ; sit right down there on the sprinkler, and I will tell you when to come in.' And he went off of the sprinkler, and went into the barn, and then he turned around and looked around, and then he says :    ' All right ; come in.'    I was not ready ; I turned about to be sure to take the right—to have everything ready.    I knew the horses would start quick up the rise.    And he says ' Come on now ; everything is all right,' and went into the door ; so I started, and when I came in the door the upper part of the door struck me right here," jamming the plaintiff between the top of the doorway and the seat of the sprinkler and injuring his spine.    One witness stated that when the defendant called to the plaintiff the second time there was " a little anger with it."    There was also evidence tending to prove that the barn floor was about three feet above the level of the yard, and, that from the barn floor to the bottom of the rise was about ten feet.    Just how far from the door the plaintiff stopped his team and the defendant got down does not appear.    He says he stopped the sprinkler when he came near the barn door.    If he stopped his horses at the foot of the rise sitting upon the seat he would be some twenty feet away.    The top of the doorway was from six inches to a foot above the seat of the sprinkler when standing on the level of the barn floor.    The question presented by the exceptions is whether upon the undisputed evidence, viewed in the light most favorable to the plaintiff, a verdict for the plaintiff could be sustained.

Was the defendant negligent?    It is familiar law that it is the duty of the master to exercise ordinary care in view of all the circumstances to see that the servant shall not be exposed to dangers which can be avoided by the use of such care.    *Rhoades* v. *Varney*, 91 Maine, 222 ; and to use all reasonable precautions for the safety of those in his service.    *Buzzell* v. *Laconia Mnfg. Co.*, 48 Maine, 113. When intelligent and impartial men might honestly draw different conclusions from the facts the question of ordinary care is for the jury.    *Larrabee* v. *Sewell*, 66 Maine, 376. The court is of the opinion that a jury would be justified in finding that to order the defendant to "hold on" and "sit right down there" upon the seat, for that was where he was sitting at the time he rose up, and to drive this sprinkler through a door through which the defendant knew it had

never been, without making any tests or measurements to see whether it could be done with safety, did not fulfil the measure of duty which the law imposes upon the master. If, as is urged, the defendant did not go into the barn to see if the doorway was of sufficient height to allow the sprinkler to be driven in in safety, that his attention was not directed to the danger and he did not notice it, it was none the less a failure to exercise ordinary care to see that the place into which he ordered the plaintiff to drive was reasonably safe. It is stoutly contended however that the defendant did not order or direct the plaintiff to drive into the barn, but simply when to drive in, and the defendant relies upon the plaintiff's testimony, "He raised up in the seat, and I thought I was going off too, and he says, 'Hold on, sit right down there on the sprinkler and I will tell you when to come in.'" It is a fair inference that this was an order for the plaintiff to remain seated on the sprinkler. Whether the plaintiff's subsequent statement, made after going into the barn and looking around, "All right; come in." "Come on now; everything is all right," the last time with a little anger in his voice, did not amount to an order, was for the jury to determine. Certainly the defendant's construction is not the only inference which intelligent and impartial men might draw from his language and acts. To constitute an order it is never necessary to show that the language used is of a formally imperative character. In *Stephens* v. *H. & St. J. R. Co.*, 96 Mo. 207, a workman, when told to clear the track as a train was coming, said to the foreman that there were two stones on the track, and was told that it was time he was getting them off. It was held that he was justified in considering this an order. In the case at bar whether the defendant ordered the plaintiff to drive into the barn is to be determined from the standpoint of what, under all the circumstances, the plaintiff was justified in considering it.

Was the plaintiff guilty of contributory negligence? It is urged that the accident took place in broad daylight, that the plaintiff was only some twenty feet away from the doorway, that the situation was as apparent to him as to the defendant, that he did not rely upon the defendant's statements but upon his own judgment, that if he failed to use his senses he was guilty of contributory negligence,

and that, if he did use them, he must have seen and appreciated the danger and voluntarily assumed the risk. In considering what conclusion a jury would be justified in reaching upon this question it is necessary to remember that in this case there are present two 'differentiating circumstances, that the plaintiff was obeying the direct specific orders of the master present, and that he acted under an assurance of safety. "Although the circumstances when abstracted from the fact of the giving of the order may be such as to justify a court in holding that the servant appreciated the danger to which his injury was due, and was negligent in subjecting himself to the danger, such a conclusion is in a large number of instances not warrantable, if the testimony goes to show that the immediate occasion of his being subjected to that danger was his compliance with the order." Labatt Master and Servant, section 439. And the servant's position is strengthened when he acted not only in obedience to orders but under the master's assurance of safety. Idem, section 453. This court has said that under such circumstances the servant's conduct is to be viewed "in the light of reasonable charity." *Drapeau* v. *Paper Co.*, 96 Maine, 300; *Sawyer* v. *Idem*, 90 Maine, 354. In other words, in weighing all the circumstances attending the situation, obedience to the master's specific orders and his assurance of safety must be included. This well recognized doctrine is based upon several considerations; that the master and servant do not stand upon the same footing; that the servant's duty is obedience; that he has a right within reasonable limits to rely upon the master's knowledge, skill and ability, and is not bound to set his judgment against the judgment of his superior, and that orders and assurances of safety, coming from such a source, have a natural tendency to throw him off his guard and lull him into a feeling of security.

Was the danger of obedience to the order as apparent to the plaintiff as to the defendant? He did not have the same means and opportunity for observation. His eyesight was defective. While he says he could see in the doorway and see if anything was standing there yet at the same time he says it "was not so very plain; there was kind of dark." Whether and to what extent this was true

and its bearing upon the question of due care, were facts which a jury could best determine. The defendant had the advantage of viewing the doorway from the seat of the sprinkler and also viewing the sprinkler from the doorway three feet above the level of the yard. Of course the plaintiff cannot recover if he relied upon his own judgment, and the defendant's orders and assurances of safety were not the operating influence which induced him to attempt to drive into the barn while seated upon the sprinkler, because but for these differentiating circumstances it was plainly contributory negligence for him to do so without first taking steps to ascertain whether it could be done with safety, and his defective eyesight would be no excuse. He says he looked and thought it was all right to drive in, that he could drive in without bending over, and that he drove right ahead thinking that he could go through the door all right. If this testimony stood alone it would be conclusive against him. He testified further, however, that he did not exercise his own judgment about whether it was all right. On the whole testimony the court cannot say, as matter of law, that the statements of the defendant were not the operating influence which induced his action.

The plaintiff must not only have relied upon the superior judgment of the master but have had a right to rely upon it. If the danger was so patent and serious that no prudent man would have incurred it, the plaintiff cannot plead the defendant's orders as a justification for placing himself in a position of such obvious peril. Here again the court is not prepared to say, in view of all the circumstances, especially his defective eyesight and the position from which he viewed the doorway, a position retained in obedience to orders, that honest and intelligent men might not differ in their conclusions.

Did the plaintiff know and understand the nature and the extent of the danger to which he was exposed, so that he can be said to have assumed the risk? Driving into this doorway while seated upon the sprinkler, in obedience to the negligent orders of the defendant, was not a risk which was ordinarily incident to his employment, so that the plaintiff must be held in law to have assumed it at the time he made his contract, because negligence on the part of

the defendant can not be presumed to have been within the plaintiff's contemplation as a part of that employment. He did not assume it later unless he knew and fully appreciated the nature and extent of the danger. Mere knowledge that there was danger is not conclusive. *Frye* v. *Gas Co.*, 94 Maine, 17 ; *Mundle* v. *Mnfg. Co.*, 86 Maine, 400. "When we say that a man appreciates a danger, we mean that he forms a judgment as to the future, and that his judgment is right. But if against this judgment is set the judgment of a superior, one, too, who from the nature of the calling of the two men and of the superior's duty seems likely to make the more accurate forecast, and if to this is added a command to go on with his work and to run the risk, it becomes a complex question of the particular circumstances whether the inferior is not justified as a prudent man in surrendering his own opinion and obeying the command." *McKee* v. *Tourtellotte*, 167 Mass. 69. And this is equally true whether "the probability of the superior's making the more accurate forecast" arises from the nature of his calling, or from his better means of, and opportunity for, observing the situation at the time. If the danger was obvious to a person of ordinary prudence and intelligence then the plaintiff assumed the risk. He is chargeable with the full consequences of what he knew irrespective of orders or assurances of safety. In view however of his imperfect eyesight and the position he occupied twenty feet at least away from the doorway, which was up a rise ten feet in length and three feet in height, the conclusion is not irresistible that he knew and understood the nature and degree of the danger. In determining what he ought to have known in the exercise of ordinary care and prudence, with which facts he is equally chargeable, the command of the master and his assurance of safety are to be weighed as part of the attendant circumstances. "When an act is performed by a servant in obedience to a command from one having authority to give it, and the performance of the act is attended with a degree of danger, yet in such case it is not requisite that such servant shall balance the degree of danger, and decide with absolute certainty whether he must do the act, or refrain from it; and his knowledge of attendant danger will not defeat his right of

recovery, if, in obeying the command, he acted with that degree of prudence that an ordinarily prudent man would have done under the circumstances. *"Anderson Pressed Brick Co.* v. *Sobkowiak,* 148 Ill. 573. In the infinite variety of fact and circumstance presented by negligence cases it is rarely of profit to examine and compare the facts of other cases. The difficulty is in drawing the inference from the facts under the rules of law. When there is more than one inference possible the law leaves it to twelve men, rather than to one, to say what is the correct inference. In *Haley* v. *Case,* 142 Mass. 316, it is said : " When the master undertakes to direct specifically the performance of work in a particular manner, we cannot say, as matter of law, that the servant is not justified in relying to some extent upon the knowledge and carefulness of his employer, and in relaxing somewhat the vigilance which otherwise would be incumbent upon him. "

The case at bar is to be distinguished from those cases where the servant was not acting in obedience to the orders of the master and under an assurance of safety ; and also from those, where though one or both of these elements were present, the orders were general and the servant was left to do the work in his own way, such as *Wormell* v. *R. R. Co.,* 79 Maine, 405, and *Lodi* v. *Maloney,* 184 Mass. 240.

The case is close, but it is our opinion that it should be submitted to a jury to say what are the correct inferences to be drawn from the uncontradicted evidence. *Mahoney* v. *Dore,* 155 Mass. 513 ; *Burgess* v. *Ore Co.,* 165 Mass. 71.

*Exceptions sustained.*