CLARENCE RANDALL, *vs*. THE F. W. ABBOTT COMPANY and Trustee.

Cumberland.    Opinion July 7, 1913.

*Assumption of Risk.    Assurance and Order by Master.    Contributory Negligence.    Damages.    Instructions.    Obedience of Servant.*

1.  The master and servant do not stand upon equal footing.  It is the duty of the servant to obey his superior, and he is not bound at his peril to set his judgment above that of the master.
2.  He has a right, within reasonable limits, to rely upon the master's knowledge, skill and ability.
3.  The servant has a right to rely upon the belief that the master has performed the duty of furnishing him a reasonably safe place in which to perform his work.
4.  When the servant calls the master's attention to an apparent danger and is ordered by the master to do the work, and is told there is no danger, and is ordered to do the work, may be excused from the exercise of the same degree of care that would have been required of him but for the order and assurance of the master.
5.  In obeying the order of the master, he would not be guilty of contributory negligence, unless the execution of the order involved a danger so apparent, or obvious, that a person of average prudence and intelligence would have refused to obey it.

On Motion by Defendant.    Motion overruled.    Judgment on the verdict.

This is an action on the case to recover damages for personal injuries received while in the employment of the defendant, and which injuries are alleged to have been sustained by reason of the defendant's negligence.    The defendant pleaded the general issue.  The jury found for the plaintiff and assessed damages for the plaintiff in the sum of $725, and the defendant filed a motion for a new trial.    The case is stated in the opinion.

*William Lyons, and Foster & Foster,* for plaintiff.

*William H. Gulliver, and Gerry L. Brooks,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, HALEY, JJ.

HALEY, J. This is an action on the case, to recover damages for personal injuries received by the plaintiff while in the employment of the defendant. The defendant, on the day of the accident and prior thereto, was engaged in the construction of a large power house and dam at Hollis in York County, and was using in the construction large quantities of cement, which was put up in bags, about twenty inches long, ten or twelve inches wide and six inches in thickness. This cement was stored in a barn containing three bays, the bays extending from the barn floor back to the side of the barn a distance of seventeen feet, and one foot below the barn floor to the ground, and from the ground up to the eaves, a distance of about seventeen feet, the three bays being thirty-six feet in length, each being about twelve feet, with a beam extending the whole width of the bays along by and about seven feet above the barn floor. The bags were piled in tiers, the ends of the bags in the back tier being against the wall or side of the barn, the next tier piled in the same way against that one and so on out to the barn floor, and up to the eaves. Before the 28th day of April, 1911, a large quantity of the bags from several of the front tiers had been removed, so that the broken tiers were somewhat lower than the beam extending along by the barn floor.

Plaintiff begun work for the defendant on Monday preceding Saturday, the 29th day of April, and had worked on a stone crusher some distance from this barn until about nine o'clock Friday morning, when the crusher broke down, and the foreman told him to go up to the barn and handle cement. The plaintiff went to the barn, found it locked, and returned to the foreman and so reported, and was told by the foreman to go back and by that time Mr. Snodgrass, who was the general superintendent and vice-president of the defendant corporation, would be there and would unlock the barn for him as he had gone after the key. Plaintiff returned to the barn and there found Mr. Snodgrass, who set the plaintiff to work loading the cement. Mr. Snodgrass got a board or plank, five or six feet long, and put one end on the beam and

the other on a cart to be loaded, and told the plaintiff to put the cement on the plank and let it slide down into the cart. After putting a few bags on the plank as told it was found that they broke open, and Mr. Snodgrass instructed the plaintiff not to use the plank any more, but to place the cement on the girt (beam) and let the teamsters take it and place it in their carts. Mr. Snodgrass remained with the plaintiff until he had partly loaded the first load. Plaintiff worked during the remainder of Friday, the 28th day of April, loading the cement into dump carts, the carts being backed in on the barn floor. On Saturday while the plaintiff was helping to load the second load into Chester Haley's cart, several of the tiers from which no bags had been taken fell forward and down a distance of ten or twelve feet on to the plaintiff, breaking six or seven of his ribs, several of his teeth, and otherwise injuring him.

The case was tried at the April term, 1912, in Cumberland County, the verdict was for the plaintiff, and the damages assessed at the sum of seven hundred and twenty five dollars, and the case is before this court upon a motion to set aside the verdict; because it is against law, and the evidence, and because the damages awarded are excessive.

The principal question of fact presented to the jury was in regard to the instructions given the plaintiff by Mr. Snodgrass, the superintendent of the defendant company. The plaintiff claimed that Mr. Snodgrass told him to take the bags right off from the tiers, just the same as others had, and that the plaintiff said to Mr. Snodgrass, "that had ought to be taken off the top, that will be coming over on to somebody by and by, I ought to have another man and take it from the top," and that Mr. Snodgrass said, "you take it just the same as I tell you, you couldn't push that cement over if the back side of the barn was torn down," and further said, "that is all piled in good shape." The defendant claimed that the plaintiff inquired of Mr. Snodgrass how to take the bags off, and was told to go ahead in his own way, and that Mr. Snodgrass gave the plaintiff no instructions or directions how to take the bags down, or how to load them, and that he gave him

no assurance of safety, or assurance of the stability of the pile of cement in the bags.

The plaintiff relied upon his own testimony as to the conversation. The defendant relied upon an affidavit, filed by counsel, of what Mr. Snodgrass would testify to, if present, and the fact that the plaintiff did not tell the defendant's attorney, who was investigating the accident, May 6th of the conversation with Mr. Snodgrass, but told him that Mr. Snodgrass told him to do it in his own way. This conversation is denied by the plaintiff, who it is admitted was confined to his bed at the time, and the testimony shows that a part of the time he was delirious. And the plaintiff further seeks to impeach the attorney's statement by the fact that the plaintiff cannot read, while the attorney says that while he was having this talk with the plaintiff, the plaintiff was in bed reading a book.

The fact that the plaintiff within a few days of the accident, while confined to his bed, and suffering, as the testimony shows, severe pain, did not state the conversation between him and Mr. Snodgrass, it not being brought to his attention, may well have been considered by the jury as entitled to but little consideration, if any. It was a question of fact, and the jury must have found that the plaintiff's version was correct, and we cannot say they were not authorized to believe the plaintiff's testimony, instead of the affidavit of what Mr. Snodgrass would testify to, if present.

The defendant claims that even if the instructions and assurance of safety were given by Mr. Snodgrass, as testified to by the plaintiff, that the verdict should be set aside and a new trial granted; because the plaintiff could, by the exercise of due care, have seen the danger, and could have avoided the accident, but that as the plaintiff continued to work after the conditions had changed materially from the time it is claimed the assurance of safety was given him, if he performed his duty as he should, he could not help knowing and appreciating the danger, and that he assumed the risk caused by the changed condition, and was guilty of contributory negligence.

"The master and servant do not stand upon equal footing; it is the duty of the servant to obey his superior, and he is not bound at his peril to set his judgment above that of the master, but has a

right within reasonable limits to rely upon the master's knowledge, skill and ability, and an order and an assurance of safety coming from the master, justify the servant having confidence that the assurance is true, and have a natural tendency to throw him off his guard, and lull him into a feeling of security." *Jensen* v. *Kyer,* 101 Maine, 106. The servant has a right to rely upon the belief that the master has performed the duty of furnishing him a reasonably safe place in which to perform his work, and when the servant calls the master's attention to an apparent danger, and is ordered by the master to do the work, and assured there is no danger, and states facts as of his own knowledge, that if true, make the place free from danger, the servant may, by the order and assurance, be excused from the exercise of the same degree of care that would have been incumbent upon him but for the order and assurance of the master, and by obeying the order of the master he would not be guilty of contributory negligence, unless the execution of the order involved a danger so apparent or obvious that a person of average prudence and intelligence would have refused to obey it. "For, if the danger is not so absolute or imminent that injury must almost necessarily result from obedience to an order and assurance of safety, and the servant obeys the order and is injured, the master will not afterwards be allowed to defend himself on the ground that the servant ought not to have obeyed the order, or believed the assurance of safety given by the master." Labatt Master and Servant, Sec. 439; 48 L. R. A., 542 note. "If the servant is shown to have entered upon the performance of certain work, or continued to perform that work, relying upon an assurance of his master, or his master's representative, that said work would not imperil his safety, the mere fact that before he received the assurance, his apprehension as to the possibility of injury had been excited by circumstances which had come to his knowledge, will not as a matter of law render him chargeable, either with an assumption of the risk involved in the work, or with contributory negligence." Labatt Master and Servant, Secs. 450-451; *McKee* v. *Tourtelotte,* 167 Mass., 69.

The plaintiff testified that he relied upon the assurance of safety given by his superior, giving as a reason for relying upon it, the

answer, "because I thought he knew more about it than I did," and if the fact stated by the superior was true, (and the plaintiff had no knowledge of whether the statement was true or not), it was safe for the plaintiff to perform the work in the manner he was ordered to by his superior.

The plaintiff's version of the accident is only attempted to be contradicted by an affidavit prepared by defendant's attorney and signed by Chester Haley, who was a witness, and whose testimony as to the accident corroborated the plaintiff, but that affidavit was not proof of any fact stated therein; it was only admissible as tending to impeach the witness Haley, and that part of it which attempted to give the opinion of Haley as to the cause of the accident was not admissible for that purpose.

If the assurance of safety was given to the plaintiff, it was given that he would feel safe in doing the work in the place and surroundings furnished by the master, and the jury was the proper tribunal to pass upon the question of the plaintiff's due care, contributory negligence, and whether he assumed the risk of the cement falling or not, and if they believed the assurance was given him, and he relied upon it as he testified, there being nothing to contradict his statement as to the manner in which the accident happened, they would be justified in finding, that he was in the exercise of due care, free from contributory negligence, and that he did not assume the risk, and as the evidence would authorize that conclusion, we should not substitute our judgment for the judgment of the jury, and their finding upon those questions being authorized by the evidence are binding upon this court.

The evidence does not show that the plaintiff lost by his failure to work the amount of the verdict, but the pain he necessarily suffered from the injuries received, together with his loss of time, unquestionably authorized the finding of the jury upon that branch of the case.

*Motion overruled.*
*Judgment on the verdict.*