ALEXANDER MARANDA *vs.* ALPHONSE GAULIN.

JULY 5, 1917.

PRESENT: Parkhurst. C. J., Sweetland, Vincent, and Baker, JJ.

(1)  *Master and Servant.   Negligence.   Apprehension of Danger.   Assumed Risks.*

Where a servant, although apprehensive, was not sure of the danger, and being under the direct supervision of his master and calling his master's attention to the possible danger and receiving his assurance that it was all right, obeyed his master's direct order and was injured as a result of such obedience, and it appeared from the testimony of plaintiff that never at any time had plaintiff been called upon to use his own judgment as to the proper length in the cutting of fuses for blasting, that he had no experience as to how long it would take a given length of fuse to burn, and it did not appear that he had ever seen or known of a premature explosion or that he had any knowledge as to how short a fuse could be used safely, the questions whether plaintiff assumed the risk and whether he was guilty of contributory negligence were questions of fact, and it was not error to refuse to direct a verdict for defendant.

VINCENT, J., dissents.

Trespass on the case for negligence. Heard on exception of defendant and overruled.

Parkhurst. C. J.   This is an action of the case for negligence wherein the plaintiff, who was a servant of the defendant, seeks to recover damages for injuries claimed to have been sustained by plaintiff when working under the direct supervision and order of the defendant as master, on the 23d day of September, 1912.

The case was tried before a justice of the Superior Court sitting with a jury, in May, 1916. It is claimed by plaintiff that on September 23d, 1912, the plaintiff was working with and for the defendant, owner of a farm, in the blasting of rocks on the farm by the use of dynamite placed in drill-holes; that several blasts had been exploded in the morning; that a cessation of work took place from about 11.30 A. M. to 2.30 P. M.; that after 2.30 P. M. the work of blasting was resumed by the parties, and that after several blasts had been exploded, a blast lighted by plaintiff exploded so suddenly that plaintiff had not time to get away from the rock to a place of safety or even to turn around, and that he was severely injured in the left eye, left ear and left hand; that by reason of the injury he lost his left eye, was made permanently deaf in his left ear, and permanently lost the efficient use of his left hand and suffered greatly during the illness which followed and as a result of necessary surgical operations.

The method of blasting was by placing a sufficient amount of dynamite in the bottom of a drill-hole in a rock, then placing in contact therewith an explosive cap at the end of a powder fuse which was cut long enough to extend upwards and outwards beyond the drill-hole, and then filling the drill-hole with earth pressed down to cover the charge and then lighting the fuse. The plaintiff claimed as to the rock which exploded prematurely that

the drill-hole was about four and one-half inches in depth; that under orders from the defendant the plaintiff loaded the hole with the dynamite, and received from the defendant a fuse cut by the defendant about six inches in length with a cap attached thereto, placed it in the drill-hole, and placed the earth in the hole, and found that the fuse extended only about two inches above the surface of the rock; that the defendant gave him a match to light the fuse, and that he, the plaintiff, then said to defendant in substance, that the fuse was short, that he was afraid and asked the defendant what he should do about it, and that the defendant told him it was all right and ordered him to light it, and that acting under that order he did light it, with the result above set forth.

The plaintiff and defendant were the only persons present at the time of the explosion. The defendant's account of the occurrence was in most respects a complete denial of all the material statements of the plaintiff; he told a different story as to the explosion, claiming that there were two explosions; that the first explosion was of fuses and dynamite in a pan or kettle in which fuses were kept and carried about during the progress of the blasting, and seeming to claim, though not very clearly, that this explosion of the materials in the pan or kettle was the one which injured the plaintiff and was caused by plaintiff's negligence in throwing a lighted match therein; and that the explosion of the rock occurred thereafter but was not the cause of the injury to the plaintiff. The defendant also denied all of the plaintiff's statements in regard to plaintiff's lack of knowledge and experience in blasting, and denied having exercised any supervision or having given any orders to plaintiff or having cut any fuses for plaintiff to use.

At the close of all the testimony, the defendant moved that the jury be directed to return a verdict for the defendant on the ground that the plaintiff's own testimony

showed that he had such knowledge and experience of blasting and such appreciation of the risks which he took, and of the danger attendant upon his acts, that he should be held as a matter of law to have assumed the risk of what he did and to have been guilty of contributory negligence in his reckless disregard of danger which was obvious to him.

The trial judge refused to direct a verdict for the defendant as requested; the case was submitted to the jury which returned a verdict for the plaintiff in the sum of $4,000; the defendant did not ask for a new trial in the Superior Court, but in due time filed and prosecuted his bill of exceptions to this court; and the case is now before us upon the bill of exceptions; the only exception, pressed before this court, is that taken to the ruling of the trial judge in denying the defendant's motion for direction of a verdict in his favor.

The sole question before this court is whether upon the plaintiff's own testimony, which must for the purpose of this decision be taken as true, it conclusively appears that the plaintiff assumed the risk of injury or was guilty of contributory negligence as a matter of law, so that the trial judge erred in submitting the case to the jury.

In substance the plaintiff testified that in 1908 he came from Canada where he had worked on a farm and had had no experience or knowledge whatever of blasting; that he went to work for the defendant as a farm hand in 1908 and worked for defendant from that time (except in winter) until the time of the injury; that the farm of defendant had many stones and rocks, and that during 1908 and two years following special men were employed by defendant (two or three at a time) to do blasting; that during 1908 plaintiff did no such work, nor does it appear to what extent he had opportunity to watch the operation; that a Mr. Lefebvre (who was a nephew of defendant and had worked for him for some years before 1908) was at

times working on the farm; that gradually as time went
on the plaintiff working with Mr. Lefebvre learned to
drill holes in rocks for blasting, sometimes drilling them
alone in small rocks, and sometimes holding the drill for
Lefebvre to strike in drilling big rocks; plaintiff says
that in doing this work he was under the direction of Le-
febvre who bossed the job; plaintiff says that he never up
to the day of the injury lighted any fuses to set off blasts,
but that Mr. Lefebvre always did that after they had
drilled holes; he admits that he may have loaded the holes
a few times with dynamite before that day and may have
cut a few fuses under Lefebvre's supervision, but says
that he never until the day of the injury lighted any fuses
or himself conducted the operation of blasting, which was
theretofore done by Lefebvre; that on the day of the in-
jury Lefebvre was not present; that on that day Gaulin,
the defendant, took the plaintiff to the farm and set him
to work at blasting rocks, told him what to do and what
rocks to blast, and directed him to dig around stones to
loosen them; that defendant carried about with him an
uncovered pail or pan (of metal) in which were fuses,
caps and dynamite, and directed plaintiff to load the holes
(which appear to have been drilled and made ready be-
fore); that defendant cut all the fuses and directed plain-
tiff to place the fuses in the holes; no suggestion is made
anywhere in the testimony that anything dangerous
happened in any of the blasts during the day until the
fifth blast in the afternoon; plaintiff in substance says,
as to this blast, that defendant ordered him to dig more
around the stone (which he did) and then ordered him to
load the hole, and handed him or laid upon the rock a
fuse cut by defendant with a cap attached and ordered
him to finish loading; that, when the fuse had been in-
serted and the loading finished, the fuse only projected
above the hole about two inches; that plaintiff was not
sure whether or not the fuse was too short for safety,

was afraid it might be and called defendant's attention to it and asked if he should light it, said he was afraid, and asked what he should do with it; and that defendant handed him a match to light it with, told him to go on and light it and said that it was all right; that defendant stood where he could see the fuse, had cut it himself and knew its length; that plaintiff regarded defendant as his boss, knew he was paying plaintiff to work for him and expected plaintiff to obey orders, and knew that defendant had more knowledge of dynamite and explosives than plaintiff had; that he obeyed the order and was immediately injured by the blast before he had time even to turn around.

(1)    From plaintiff's testimony the jury had a right to find that never at any time had the plaintiff been called upon to use his own judgment as to the proper length in the cutting of fuses; that never at any time had he had experience as to how long it would take a given length of fuse to burn; it does not appear that he had ever seen or known of a premature explosion or that he had any knowledge as to how short a fuse could be used safely.

The questions whether the plaintiff assumed the risk and whether he was guilty of contributory negligence are questions of fact. Many cases have arisen where the testimony is so clear and conclusive upon the plaintiff's own admission of his knowledge and skill and appreciation of danger that courts have found such facts to be fully and conclusively proved so that it would be error to submit them to the jury.

But in this case, we have the fact that the plaintiff, not being sure of the danger, though apprehensive, and being under the direct supervision of his master, calling his master's attention to the possible danger, and receiving his master's assurance that it is all right, obeys his master's direct order and is injured as a result of such obedience.

The cases cited on behalf of the defendant in support of his exception are all cases where the evidence clearly showed that the plaintiff was a man of such long experience and full knowledge of the danger of his acts which resulted in his injury that he either assumed the risk or was guilty of contributory negligence; we do not find in any of these cases circumstances similar to the case at bar, where the servant being apprehensive of possible danger appealed to his master, and received his assurance of safety, coupled with an order to go ahead and do the thing which resulted in the injury.

In the cases cited on behalf of the plaintiff, we find ample authority, under circumstances similar in principle to those appearing in the case at bar for the submission of the questions of assumed risk and of contributory negligence to the jury as questions of fact for its determination.

In *Pinney* v. *King,* (Minn. 1906) 107 N. W. 1127, it appeared that dynamite was used for the purpose of blowing up a wreck under water; that it was necessary to heat the dynamite to a certain temperature; that the plaintiff was a laborer working under a foreman (who was held to be a vice-principal of the master) and under his orders was engaged with others in the work of heating up an old boiler, and after heating, of placing sticks of dynamite on boards upon the heated grate bars; that owing to the inattention of the vice-principal and others the boiler became overheated and caused the dynamite to explode killing several men and injuring the plaintiff; the same questions substantially were raised by the defence in that case as in the case at bar. After speaking of the plaintiff's lack of experience in this manner of treating dynamite, and of his reliance upon the foreman for guidance and direction, the court said, p. 1128: " It appears that he was nervous and somewhat agitated during the time the dynamite was being warmed, because, in his

32

opinion, the boiler was overheated, and that he called the attention of the foreman to the fact. The foreman assured him that it was all right, and ordered him to let it alone. Because he was fearful of danger, it does not follow, as a matter of law, that he fully appreciated the risks and hazards of his situation. The question was properly left to the jury." See also *Randall* v. *Abbott Co.,* 111 Me. 7, 12 (1913); *Jensen* v. *Kyer,* 101 Me. 106, 113 (1905); *Chicago Anderson Pressed Brick Co.* v. *Sobkowiak,* 148 Ill. 573; *Lake Superior Iron Co.* v. *Erickson,* 39 Mich. 492, 500; *Southern Cotton Oil Co.* v. *Spotts,* 77 Ark. 458; *Haley* v. *Case,* 142 Mass. 316, 320; *Mahoney* v. *Dore,* 155 Mass. 513, 520; *Burgess* v. *Davis Sulphur Ore Co.,* 165 Mass. 71, 74; *Shannon* v. *Shaw,* 201 Mass. 393, 397; 4 Labatt's Master and Servant (2d Ed.), p. 3927 *et seq.*

In our opinion the questions raised by defendant in the case at bar were properly submitted to the jury, and we find no error on the part of the trial judge in refusing to direct a verdict for the defendant.

The defendant's exception is overruled and the case is remitted to the Superior Court sitting in the County of Providence with direction to enter judgment for the plaintiff upon the verdict.

Vincent, J., dissents.

*Fitzgerald & Higgins,* for plaintiff.
*Elphege J. Daignault, Boss & Barnefield,* for defendant.